18-30-5306

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROGELIO VALDEZ, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **2018 CV 5434** |
| | ) | |
| THE VILLAGE OF BROOKFIELD, | ) | **Honorable Marvin E. Aspen** |
| Illinois, a municipal corporation, | ) | |
| and Brookfield Police Officers | ) | |
| ANDREW LOWRY #402, | ) | |
| RAFAEL ALVARADO #414, | ) | |
| NICHOLAS HAHN #408, | ) | |
| ANTHONY ZEMAN #409, | ) | |
| MARK McEWAN #424, | ) | |
| RAYMOND PATON #411, and | ) | |
| DANIEL FLORES #401 | ) | |
| | ) | |
| **Defendants** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COME the eight Defendants, (1) VILLAGE OF BROOKFIELD, an Illinois

municipal corporation, (2) Officer ANDREW LOWRY #402 (ret.), (3) Officer RAFAEL

ALVARADO #414, (4) Sergeant NICHOLAS HAHN #408, (5) Officer ANTHONY ZEMAN

#409, (6) Officer MARK MCEWAN #424, (7) Sergeant RAYMOND PATON #411 and (8)

Officer DANIEL FLORES #401 (collectively "Defendant-Officers"), by and through their

attorney, Michael R. Hartigan of Hartigan & O'Connor, P.C., and for their Memorandum of Law

in support of their Motion for Partial Summary Judgment, states the following:

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings, depositions, answers to interrogatories

and admissions on file, together with the affidavits, if any, show that there is no genuine issue of

fact as a matter of law. F.R.C.P. 56(c). *Celotex Corp v. Catrett*, 477 U.S. 317 (1986).  In

determining whether a genuine issue of material fact exists, the court construes all facts in the

light most favorable to the nonmoving party, and draws all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## ARGUMENT

**I.**     **Counts I and III are time-barred by the two-year statute of limitations applicable to 4th Amendment claims brought pursuant to 42 U.S.C. §1983 as they were filed two years and one day beyond the statute**

The statute of limitations for § 1983 claims in Illinois is two years. *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir.2011) (citing 735 ILCS 5/13–202 and *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir.2007)). Federal law, however, governs the accrual date for § 1983 claims, which is when the plaintiff "knows or should know that his or her constitutional rights have been violated." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir.2004) (citations and internal quotation omitted); *Wallace v. Kato*, 549 U.S. 384, 388 (2007)("accrual occurs when the plaintiff has a complete and present cause of action, that is, when a plaintiff can file suit and obtain relief."). "A Fourth Amendment claim accrues at the time of the search or seizure." *Neita v. City of Chicago,* 830 F.3d 494, 498 (7th Cir. 2016). "A statute of limitations confers rights on putative defendants; judges cannot deprive those persons of entitlements under a statute. If a judge cannot extend the period of limitations directly, why should orders adding time to refile a dismissed action be effective?" *Lee v. Cook County*, 635 F.3d 969, at 972 (7th Cir. 2011).

While it is true that some claims do not accrue until the conviction is reversed or the proceedings against the accused are terminated in the accused's favor, Fourth Amendment claims (like the two at issue here), as a general rule, do not have a delayed accrual. Indeed, *Heck v. Humphrey*, 512 U.S. 477 (1994) does not extend what would otherwise be a facially applicable statute of limitations for the Plaintiff's Fourth Amendment claims for false arrest and excessive force under §1983. *Heck* provides that certain putative constitutional claims that might arise in

2

relation to a criminal arrest and/or prosecution cannot be raised, and thus do not accrue for statute of limitations purposes, until the conviction or sentence of the criminal defendant/putative civil plaintiff has been overturned or otherwise invalidated, or the prosecution related to them concludes unsuccessfully. _Heck_, 512 U.S. at 486-87; _Wallace v. City of Chicago_, 440 F.3d, 421, 425 (7th Cir. 2006), affirmed 549 U.S. 384 (2007).

In _Wallace_, the Seventh Circuit confirmed that a §1983 unlawful arrest claim accrues on the date of the arrest. 440 F.3d at 427 (quoting and reaffirming the holding of _Booker v. Ward_, 94 F.2d 1052 (7th Cir. 1996).) _Wallace_ also held that the putative Fourth Amendment unlawful search claim and the excessive force claim accrued, under _Heck_, on the date of the arrest – given that plaintiff alleged that the defendant and other Chicago Police Department officers painfully bent his thumb, fingers and wrist after they arrested him without probable cause. Fourth Amendment claims accrue at the time (or termination) of the violation. _Wallace v. Kato_, 549 U.S. 384 (2007). Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction and so such claims are not suspended under the _Heck_ bar to suit. _Dominguez v. Hendley_, 545 F.3d 585 (7th Cir. 2008).

Count I only challenges the arrest. To the extent Valdez complains of the arrest itself, and not any ensuing custody, the claim is time-barred. _Wallace v. Kato_, 549 U.S. 384 (2007). _See Manuel v. City of Joliet, Illinois_, 903 F.3d at 669 (7th Cir. 2018). Count I does not plead an unlawful detention claim (a "Manuel" claim). Case law makes clear that any claims for Valdez's alleged unlawful search and seizure occurred on August 8, 2016; however, it must be clarified that any claim for unlawful detention would have accrued the following day when Valdez was released from jail. _Manuel v. City of Joliet, Illinois_, 903 F.3d 667, 669 (7th Cir. 2018) (holding that "[w]hen a search or seizure causes injury independent of time spent in custody, the claim

3

accrues immediately; but when the objection is to the custody, a different approach must control....[thus,] the end of detention starts the period of limitations.").

In the present matter, Plaintiff knew that the four officers that allegedly committed the excessive force (Count I) and false arrest (Count III) did so on August 8, 2016. There is no dispute that Plaintiff placed his 911 call at or around 11:03PM on August 8, 2016 (SOF, ¶12). The four Brookfield Police Department officers that responded to this domestic dispute arrived within "minutes" from Plaintiff's 911 call. (SOF, ¶¶16-17). While Plaintiff's unverified Complaint, filed August 9, 2018, alleges that the first arrest transpired on August 9, 2016 (Doc. 1), after extensive written and oral discovery, it is quite clear that the arrest took place before midnight on August 8, 2016. Such is supported by Plaintiff's own deposition testimony. (SOF, ¶12). In addition to testimony from Plaintiff that the alleged constitutional violations took place shortly after 11:00PM on August 8, 2016, Plaintiff was offered and refused to sign the "Brookfield Police Department – Statement of Constitutional Rights and Waiver", on August 8, 2016 at 11:43PM. (SOF, ¶¶27). Further, the Brookfield Police Department "Prisoner Inspection Record" has Plaintiff being placed into cell #M2 at 23:54 on August 8, 2016. (SOF, ¶28). Further, the injured Brookfield Police Department Officer, Andrew Lowry, had been transported and admitted to La Grange Hospital by 11:30PM on August 8, 2016. (SOF, ¶25). It is reported that Officers Alvarado and Zeman canvassed Plaintiff's apartment building on August 8, 2016 at 12:03AM to locate and speak with witnesses to the occurrence. (SOF, ¶29).

In response to this anticipated argument, Plaintiff will counter that the two felony complaints indicate that the events took place on August 9, 2016. Officer Rafael Alvarado, the arresting officer, drafted the felony complaints and testified, at his deposition and now via his sworn statement, that this was a scrivener's error and that the correct date of each offense was

4

August 8, 2016. (SOF, ¶31). Plaintiff does not dispute this at his deposition. Officer Zeman, who

signed the felony complaints on Officer Lowry's behalf (as he was hospitalized), similarly

testified that the arrest took place on August 8, 2016. (SOF, ¶31-32). Officer Alvarado had not

contacted Cook County Felony Review for felony approval until 1:20AM on August 9, 2016 and

had the felony aggravated battery and resisting charges approved by (former) Assistant State's

Attorney Lauren DaValle at 1:47AM on August 9, 2016. (SOF, ¶30).

In summary, the alleged excessive force and false arrest of Plaintiff occurred on August

8, 2016 shortly after 11:00PM and certainly before Valdez was placed into a cell at 11:54PM and

officers began canvassing Valdez' apartment building approximately 10 minutes later. (SOF,

¶¶28-29). Plaintiff waited until August 9, 2018, to file this cause of action (Doc. 1) and will

likely contend that he reasonably relied upon the date of offense in the two felony complaints as

the correct date of each offense. However, the failure of an attorney to file a case within the

statute does not extend the statute.  In *United States v. Hill*, 826 F.2d 507 (7th Cir. 1987), the

court, in discussing a tardy motion under Fed.R.Crim.P. 35(b), held that the most the plaintiff

could say is that her attorney was negligent, maybe even misled her.  But neglect or misconduct

by an attorney cannot give the court a power it lacks. An attorney who misses a statute of

limitations does not thereby extend or toll the statute.  *Hill*, 826 F.2d at 508.  Courts used to say

that a single day's delay can cost a litigant valuable rights. *Johnson v. McBride*, 381 F.3d 587

(7th Cir. 2004).  With e-filing, one hour or even a minute's delay can cost a litigant valuable

rights. *Justice v. Town of Cicero*, 682 F.3d 662, 665 (7th Cir. 2012). In *Davis v. Browner*, the

court found that the time limit [for filing a Title VII complaint] was not flexible, even for *pro se*

litigants, and a one day delay in filing was fatal. 113 F.Supp.2d 1223, 1225 (N.D. Ill. 2000).  The

limitations periods in Title VII cases are not jurisdictional, they are treated like statutes of

limitations. *Zipes v. Trans. World Airlines*, 455 U.S. 385 (1982). Since the limitations of actions in Title VII cases is akin to a statute of limitations, those cases finding even a one day delay as fatal are equally applicable to this §1983 case.

        **a.**        **The Statute of Limitations is Not Subject to Equitable Tolling**

Because personal injury actions were recognized in common law, the statute of limitations is procedural, rather than jurisdictional. See *Smith v. City of Chicago Heights*, 951 F.2d 834 (7th Cir. 1992). The limitations period is, therefore, potentially subject to equitable tolling. *Id*. Equitable tolling permits a plaintiff to avoid the bar of a statute of limitations if, despite all due diligence, he is unable to obtain vital information bearing on the existence of his claim. *Cada v. Baxter Healthcare Corp*, 920 F.2d 446, 451 (7th Cir. 1990). The related doctrine of equitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations. *Cada*, 920 F.2d 446, 450-51 (7th Cir. 1990). Plaintiff's Complaint does not plead any facts that suggest either doctrine applies. Equitable tolling excuses delay when "despite all due diligence [the litigant] is unable to obtain vital information bearing on the existence of his claim". *Johnson v. McBride*, 381 F.3d 587, 589. But lawyers are agents, their acts are attributed to the clients they represent. *Johnson v. McBride*, 381 F.3d 587, 590 (7th Cir. 2004). In *Johnson*, the court held that no principled distinction exists between incapacity [of the attorney] and negligence for equitable tolling purposes. The client is responsible for the attorney's bungling of his case. *Johnson*, 381 F.3d at 589. A lawyer's ineptitude does not support equitable tolling. *Lee v. County of Cook*, 635 F.3d 969, 973 (7th Cir. 2011), *citing Lawrence v. Florida*, 549 U.S. 327, 336 (2007). The *Lee* court found that the remedy [for late filing of the complaint] is not continued litigation against defendants, who are entitled to stand on their rights to dismissal when the plaintiff does not file a

6

timely suit; the remedy is a malpractice action against the lawyers whose negligence is responsible for the problem. _Lee v. Cook County_, 635 F.3d 969, 972 (7th Cir. 2011), _citing_ _Farzana K. v. Indiana Department of Education_, 473 F.3d 703, 706 (7th Cir. 2007).

While dismissal based upon the filing of a cause of action one day too late might seem harsh, the Seventh Circuit has made clear that, where a deadline is simply missed by a day, such is not an extraordinary circumstance justifying equitable tolling. _United States v. Marcello_, 212 F.3d 1005, 1010 (7th Cir. 2000) (rejecting petitioner's argument that statute of limitations should be equitably tolled where deadline missed by a day.)

Accordingly, Defendants, VILLAGE OF BROOKFIELD, Officers LOWRY, ALVARADO, HAHN and ZEMAN respectfully request dismissal of Count I (False Arrest) and Count III (Excessive Force) as they were filed one day beyond the two-year statute of limitations period and neither equitable tolling or equitable estoppel apply.

## II.     Even if not time-barred, Plaintiff's Count III (Excessive Force) is not supported by the record and should be dismissed.

"An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest." _Williams v. Brooks_, 809 F.3d 936, 944 (7th Cir. 2016). Courts evaluate a claim that an officer used excessive force while making an arrest under the Fourth Amendment's standard of objective reasonableness. _Graham v. Connor_, 490 U.S. 386, 395–96. This standard requires courts to "'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" _Scott v. Harris_, 550 U.S. 372, 383 (2007)(brackets omitted) (quoting _United States v. Place_, 462 U.S. 696, 703 (1983)). "An officer's use of force is unreasonable from a constitutional point of view only if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was

7

reasonably necessary to make the arrest." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir.

2009) (internal quotation marks omitted).

In *Graham*, the Supreme Court set forth factors to determine whether a police officer's

use of force was reasonable, including: (1) "the severity of the crime at issue"; (2) "whether the

suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is

actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. Courts determine

whether a particular use of force was reasonable under the circumstances by viewing the matter

"from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight." *Id*. (citation omitted). Courts remain cognizant of "the fact that police officers are

often forced to make split-second judgments—in circumstances that are tense, uncertain, and

rapidly evolving—about the amount of force that is necessary in a particular situation." *Williams*,

809 F.3d at 944 (quoting *Abbott v. Sangamon Cty., Ill*., 705 F.3d 706, 724 (7th Cir. 2013)).

"[S]ummary judgment is often inappropriate in excessive force cases because the evidence

surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus v.

Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) (citation omitted); *see also Abdullahi v.

City of Madison*, 423 F.3d 763, 772–73 (7th Cir. 2005)(noting that because the Graham

reasonableness inquiry "nearly always requires a jury to sift through disputed factual

contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of

law in excessive force cases should be granted sparingly.") (internal quotation marks omitted).

In the instant matter, while Plaintiff denies that he resisted arrest, the only force

used upon Plaintiff was force used to bring plaintiff under control. Accordingly, this Court must

consider whether "the officer used greater force than was reasonably necessary" to restrain

plaintiff. *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) and whether the force was *de*

*minimis* in nature (see *infra*). To do so, the Court must first examine the testimony from Plaintiff regarding the force used upon him while outside his apartment on August 8, 2016 shortly after the officers arrived. Plaintiff testified that the Hispanic officer and the Caucasian officer "grabbed" him and placed handcuffed on him in a matter of "about five" seconds. (SOF ¶19). There is no dispute that Officer Alvarado used his handcuffs to restrain Plaintiff with the assistance of Officers Lowry and Zeman. (SOF ¶20). Plaintiff specifically denied that he experienced any pain or discomfort as he was being handcuffed. (SOF, ¶24). He was never thrown to the ground or lifted from the ground. (SOF, ¶24). Plaintiff was led down the stairs by Officer Alvarado and Officer Lowry. (SOF, ¶23). For purposes of this motion, Defendants must concede that Plaintiff injured his great left toe in the course of the arrest. (SOF, ¶24). However, to his credit, Plaintiff conceded that this contact was incidental to the arrest and not purposefully done:

> **Q:** **And is it your testimony here today that those officers stepped on your left great toe purposefully so as to cause you injury?**
>
> **A:** **I don't believe it was intentionally. It was because they were running down [the stairs] so fast and they just kept stepping on me because it was a tight spot. (SOF, ¶23).**

Plaintiff, who before calling 911 had consumed three to five beers in addition to a host of psychotropic medications (Tramadol, Diazepam and Quetiapine)(SOF, #13), did not recall requesting medical attention from any of the officer(s) involved during the transport from his apartment to the Brookfield police department located two blocks from his apartment. (SOF, ¶24).

Plaintiff claims that he was only demonstrating to the officers how his daughter pushed him (SOF, ¶18) and denies that he instigated contact with any involved officer or that he resisted

arrest, but such does not mean that Count III must automatically go to a jury. Apart from contact

incidental to the arrest and unintentional injury to his left toe, Plaintiff did not provide any

testimony that any of the four involved officers intended to cause him harm and the only

arguably redressable injury was sustained while Plaintiff was being led down a narrow set of

stairs (i.e. "a tight spot") away from a rapidly escalating situation involving his violent and

admittedly intoxicated daughter who had "snapped" (SOF ¶15) and his son (SOF ¶14), both of

whom were attempting to interfere with the arrest. The force applied must rise to a level that

warrants constitutional scrutiny: "[n]ot every push or shove, even if it may later seem

unnecessary in the peace of a judge's chambers, violates the [Constitution]." *Graham v. Connor*,

490 U.S. 386, 396 (1989) (applying an objective reasonableness test to a pre-arraignment

detainee's claims of excessive force); *see also Bell v. Wolfish*, 441 U.S. 520, 539 n. 21 (1979)

("There is, of course, a *de minimus* level of imposition with which the Constitution is not

concerned.").

     **A.**     **Sergeant Hahn did not have any physical contact with Plaintiff**

Apart from writing up the Use of Force report, Defendant, Sergeant NICHOLAS HAHN,

had no physical contact whatsoever with Plaintiff. (SOF ¶21). There are no allegations against

him for failure to intervene, but even if there were, the record has shown that Sergeant Hahn was

involved with Plaintiff's daughter in the kitchen when Valdez was placed under arrest. (SOF,

¶21). Personal involvement is a prerequisite to liability under Section 1983, and Section 1983

defendants cannot be vicariously liable for the conduct of others. *Gossmeyer v. McDonald*, 128

F.3d 481, 495 (7th Cir. 1997); *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) (Section

1983 requires proof that the individual caused or participated in the constitutional violation).

*Johnson v. Snyder*, 444 F.3d 579, 583-584 (7th Cir. 2006) *citing Gentry v. Duckworth*, 65 F.3d

555, 561 (7th Cir. 1995); *see also Martin v. Tyson*, 845 F.2d 1451, 1455 (7th Cir. 1988) *cert*

*denied* 488 U.S. 863 (1988)(liability precluded under 1983 if no personal involvement); *Eades v.*

*Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987) (each defendant can only be liable for their own

personal actions, not for recklessness or actions on the part of other defendants); *Wolf-Lille v.*

*Sonquist*, 699 F.2d 864 (7th Cir. 1983) (1983 is based on personal liability predicated on

individual fault).

Accordingly, for all of the above-reasons, Defendants, ALVARADO, LOWRY, ZEMAN

and HAHN, respectfully request that this Court dismiss Plaintiff's Count III (Excessive Force).

> **III.     Defendants, DANIEL FLORES and MARK MCEWAN, are entitled to summary judgment as to Count II (False Arrest) and Count IV (Excessive Force) in regard to the May 2017 arrest**

> **A.     Count II: False Arrest (May 2017 arrest)**

Plaintiff claims that his May 2017 arrest violated his Fourth Amendment rights and is

actionable under § 1983. (Doc. 1). "To prevail on a false-arrest claim under 42 U.S.C. § 1983, a

plaintiff must show that there was no probable cause for his arrest." *Neita v. City of Chicago*, 830

F.3d 494, 497 (7th Cir. 2016) (*citing Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)).

To determine whether an officer had probable cause to arrest, the court examines whether an

objectively reasonable officer in the arresting officer's position would conclude, based on the

facts and circumstances within the officer's knowledge, that the suspect has committed, is

committing, or is about to commit an offense. *See Harney v. City of Chi*., 702 F.3d 916, 922 (7th

Cir. 2012). The probable cause standard depends on the totality of the circumstances and

"requires only a probability or substantial chance of criminal activity, not an actual showing of

such activity." *Illinois v. Gates*, 462 U.S. 213, 243-44, n.13 (1983)).

While there is no dispute that Officer MCEWAN and Officer FLORES were present during the arrest of Plaintiff, they were directly involved in restraining and arresting Plaintiff's daughter, Teresa Al-Dabbas, who was charged, and later pled guilty to, misdemeanor resisting and battery to a peace officer. (SOF, ¶52). While each officer was present when Plaintiff, VALDEZ, was placed under arrest, they did not make the arrest themselves. (SOF, ¶¶57-58).

### B.      Count IV: Excessive Force (May 2017 arrest)

Defendant, FLORES, was not deposed in his matter. Per his sworn statement, he was engaged with Plaintiff's daughter, Teresa Al-Dabbas (SOF, ¶48), and did not make any physical contact with Plaintiff in the course of his arrest on May 4, 2017. (SOF, ¶62).

Defendant, MCEWAN, was similarly engaged with Plaintiff's daughter (SOF, ¶48) and apart from escorting VALDEZ to his parked squad vehicle, he had no contact with Plaintiff in the course of the arrest. (SOF, ¶63).

Accordingly, Defendants, FLORES and MCEWAN, are entitled to summary judgment as to Counts II and IV.

### IV.      Officer Alvarado is entitled to summary judgment as to Count IV

Officer Alvarado, who attended both depositions of Plaintiff, was the only Brookfield Police Officer unfortunate enough to be involved in both arrests. With respect to the May 2017 arrest, Plaintiff identified Sergeant Paton (who was also present for the deposition) as the only officer that made physical contact with him:

> **Q:      And it's reported that Sergeant Paton and Officer Alvarado grabbed your arms and attempting (*sic.*) to place your arms behind your back to place you in handcuffs. Do you recall Officers Paton and Alvarado doing that?**
>
> **A:      No. What I recall is Officer Paton, he is the one that threw me against the wall, and he raised my left arm all the way close to my neck, and**

12

> **that's when he handcuffed me, and the he brought my other hand and brought my – put my other handcuff on there on by back. (SOF, ¶47).**

Plaintiff further testified as follows:

> **Q:  Did any other officers assist Sergeant Paton in handcuffing you?**
>
> **A:  No.**
>
> **Q:  Where were the other three officers when you were being handcuffed?**
>
> **A:  I think Alvarado was inside, and the other officers were in the hallway, and then they were the ones that took my daughter. (SOF, ¶47).**

Plaintiff testified that he was handcuffed in about "five seconds" (SOF, ¶47) and after

being handcuffed was asked the following:

> **Q:  Do you recall any other physical contact being made with your person after you were handcuffed?**
>
> **A:  No. (SOF, ¶49)**

One of Plaintiff's many treating physicians noted that Plaintiff reported having been

"beat up by three cops" and when asked which officers were responsible, Plaintiff testified:

> **Q:  Which three cops beat you up?**
>
> **A:  I said two.**
>
> **Q:  Which two cops beat you up?**
>
> **A:  Well, the main one was Officer Paton.**
>
> **Q:  Who was the less main one?**
>
> **A:  I think – I am not sure. (SOF, ¶49).**

While Plaintiff did not recall any physical contact between himself and any

responding officer besides Sergeant Paton, it is reported that Officer Alvarado made contact with

Plaintiff on the night of May 4, 2017. (SOF, ¶¶50, 56). In the course of placing Plaintiff under

13

arrest, Alvarado observed a knife in Valdez' back pocket and after delivering two knee strikes (which Plaintiff did not recall) this item was removed from Valdez' person and placed into evidence. (SOF, ¶¶50, 51). Plaintiff does not deny that he had a knife in his back right pocket at the time of the arrest. (SOF, ¶51).

With regard to Plaintiff's excessive force claim as to Officer Alvarado, the contact made between the two was so *de minimis*, that even after prompting from the undersigned that contact was made between Plaintiff and Alvarado, Plaintiff specifically denied it (SOF, ¶47). Again, for the same reasons set forth in section II and the 7th Circuit decisions cited therein, Plaintiff has failed to present evidence that the force used by Officer Alvarado rose to the level of constitutional concern and no reasonable juror could conclude otherwise. Accordingly, summary judgment in favor of Alvarado on Count IV is warranted.

> **V.      Counts V and VI, which allege malicious prosecution for the August 2016 and May 2017 arrest, respectively, fail as Plaintiff cannot show that the charges were terminated in a manner indicative of his innocence**

To state a cause of action for the tort of malicious prosecution, the plaintiff must prove five elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Beaman v. Freesmeyer*, 131 N.E.3d 488, 495 (Ill. 2019) (internal quotation marks omitted).

> **A.      August 8, 2016 Arrest (Count V)**

> > **1.      Commencement or continuance of an original criminal or civil judicial proceeding by the defendant**

As for the first arrest, there is no dispute that Sergeant Hahn instructed the arresting officer, Officer Alvarardo, to seek felony charges against Plaintiff for aggravated battery and

resisting of a police officer. (SOF, ¶30). After receiving felony approval, Officer Alvarado

prepared the felony complaints which were signed by Officer Zeman on behalf of Officer Lowry,

who was hospitalized at the time that the complaints were prepared. (SOF, ¶¶30-32). None of the

four officers involved in the August 2016 incident testified in a court of law against Plaintiff.

(SOF, ¶43).

### 2.     Termination of the Proceeding in favor of the Plaintiff

Under Illinois law, the plaintiff bears the burden of proving a favorable termination.

*Swick v. Liautaud*, 169 Ill. 2d 504, 513 (Ill. 1996)(noting that the plaintiff must show a *nolle*

*prosequi* "was entered for reasons consistent with his innocence"). When "a prosecutor formally

abandons" a criminal proceeding "via a *nolle prosequi*," that termination is considered to be "in

favor of the defendant . . . unless [the prosecutor] abandons the prosecution for reasons not

indicative of the defendant's innocence." *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir.

1997). The state's decision to dismiss a criminal case "is not indicative of innocence when the

*nolle prosequi* is the result of an agreement or compromise with the accused." *Swick*, 169 Ill. 2d

at 513; *see also Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013) ("A prosecutor's dismissal

of a criminal charge may imply innocence, but *Swick* added that it does not do so when it is part

of a plea bargain."); *Washington*, 127 F.3d at 557 ("The abandonment of the proceedings does

not indicate the innocence of the accused when the *nolle prosequi* results from: an agreement or

compromise with the accused . . . ."); *Cult Awareness Network v. Church of Scientology Int'l*,

685 N.E.2d 1347, 1353 (Ill. App. Ct. 1997) ("For example, if the dismissal was merely a formal

means of securing a negotiated settlement, it cannot serve as the basis for a malicious

prosecution action.")

In *Selby v. Bd. Of Trs. of Moraine Valley Cmnt. College*, 2018 WL 988091 (February 20, 2018), criminal charges brought against the plaintiff were subject to a deferred prosecution agreement wherein the plaintiff agreed to perform eighty (80) hours of community service in exchange for dismissal of the case. *Id.* at \*4. Granting the defendants' motion for summary judgment on plaintiff's claim for malicious prosecution, Magistrate Judge Gilbert held that "[b]ecause Selby's underlying criminal proceeding was dismissed as a result of his compliance with the agreement or compromise that he entered into with the State's Attorney, the dismissal is not indicative of Selby's innocence under *Swick* and its progeny." *Id.* at \*12. The Court went on to find that because plaintiff could not establish the second element of his malicious prosecution claim and "because the absence of even one element will preclude recovery for malicious prosecution" (*Id.* at \*13, citing *Logan v. Caterpillar*, 246 F.3d 912, 921-922 (7th Cir. 2001)), summary judgment in favor of the defendant was appropriate. *Id.*

In the instant matter, after waiving his right to a preliminary hearing on August 31, 2016 (SOF, ¶34), the State agreed to Plaintiff participating in the Veteran Treatment Court ("VTC") program which first involved Plaintiff being evaluated for eligibility and, if approved, participating in a series of stages before graduating from the program. (SOF, ¶¶35-37, 41, 60.

On December 7, 2016, Valdez signed a "Consent to Participate in the Veterans Court Program" ("VTC Consent") which was a negotiated agreement between the State and Valdez' private attorney, Jack Prato. (SOF, ¶38)(Valdez deposition Exhibit 21). This VTC Consent form (which specifically states is designed to "avoid conviction"), was entered on the same day by Judge Kristyna Ryan. *Id.* Following Plaintiff's admittance into the VTC program, his private attorney, Jack Prato, withdrew as there was no longer a need for his services. (SOF, ¶39).

On April 5, 2017, Plaintiff was promoted to Phase 2 of the program (SOF, ¶41).

16

On. October 4, 2017, Plaintiff was promoted to Phase 3 of the program. (SOF, ¶60).

On May 16, 2018, Plaintiff "graduated" from the Veteran's Treatment Court program and the case of <u>People v. Rogelio Valdez</u>, 16C44041701 was dismissed. (SOF, ¶42). The agreed dismissal order reads:

> **"It is hereby ordered and agreed by the parties, that due to the defendant's successful completion of the Veteran's Treatment Court, pursuant to 730 ILCS 166/35(b) of the Veterans and Service Members Court Treatment Act, the above entitled case is hereby dismissed." (SOF ¶42)(See also Valdez deposition exhibit 22)**

Plaintiff cannot satisfy the second element because the felony complaints stemming from the August 2016 arrest were dismissed based upon his compliance with what was in essence a plea bargain, here, the successful completion of the Veteran's Treatment Court program. The VTC program is a form of deferred prosecution no different than the community service hours performed by the plaintiff in *Selby*. Both forms of deferred prosecution were a result of negotiated agreements between the State and the accused's criminal defense counsel.

Defendants need not address the remaining elements to assert a state-law claim for malicious prosecution because if Plaintiff cannot satisfy *any* one of the five elements listed above, then the entire claim must necessarily fail as a matter of law.

Accordingly, Defendants, VILLAGE OF BROOKFIELD, Officer RAFAEL ALVARADO, Officer ANDREW LOWRY, Officer ANTHONY ZEMAN and Sergeant NICHOLAS HAHN, respectfully request entry of summary judgment on Count V (Malicious Prosecution).

**B.      May 4, 2017 Arrest (Count VI)**

17

1. **Commencement or continuance of an original criminal or civil judicial proceeding by the defendant**

As for the second arrest, there is no dispute that Plaintiff was charged with misdemeanor battery and resisting a peace officer. (SOF, ¶54). These two misdemeanor complaints were drafted and signed by Sergeant Paton and clerked by Officer Alvarado. (SOF, ¶57). Officers McEwan and Flores had nothing to do with the charges brought against Plaintiff. (SOF, ¶¶62-63). On the same day of his arrest, Valdez signed a Miranda waiver, posted a $150.00 D-Bond and was given an initial court date of June 13, 2017 at 9:00AM. (SOF, ¶¶53-54, 58). On August 8, 2017, the misdemeanor charges from the May 2017 arrest were consolidated with the felony charges from the August 2016 arrest for judicial economy. (SOF, ¶59). None of the four officers involved in the May 2017 arrest of Plaintiff and his daughter, Teresa Al-Dabbas, testified in a court of law. (SOF, ¶64)

2. **Termination of the Proceeding in favor of the Plaintiff**

Similar to the felony charges stemming from the August 2016 arrest, Plaintiff cannot satisfy this second element because the misdemeanor charges were dismissed based upon his graduation from Veteran's Treatment Court. Indeed, on May 16, 2018, an agreed order was entered dismissing the matter of *People of the State of Illinois v. Rogelio Valdez*, 17400250501. (SOF, ¶61). But for the caption and the nature of the charges, the language of the agreed order was identical to the order entered on the same day in the companion case. (SOF, ¶42). Indeed, the agreed order dismissing the misdemeanor charges similarly states:

> **"It is hereby ordered and agreed by the parties, that due to the defendant's successful completion of the Veteran's Treatment Court, pursuant to 730 ILCS 166/35(b) of the Veterans and Service Members Court Treatment Act, the above entitled case is hereby dismissed." (SOF ¶42)(Valdez deposition Exhibit 38).**

Pursuant to *Logan v. Caterpillar*, 246 F.3d 912 (7th Cir. 2001), Defendants need not

address the remaining elements to assert a state-law claim for malicious prosecution because if

Plaintiff cannot satisfy *any* one of the five elements listed above, then the entire claim must

necessarily fail as a matter of law.

Accordingly, Defendants, VILLAGE OF BROOKFIELD, Sergeant RAYMOND

PATON, Officer RAFAEL ALVARADO, Officer MARK MCEWAN and Officer DANIEL

FLORES, respectfully request entry of summary judgment on Plaintiff's Count VI (malicious

prosecution).

* * *

**WHEREFORE**, Defendants, VILLAGE OF BROOKFIELD, an Illinois municipal
corporation, et al, request the following relief:

(1)     Defendants, RAFAEL ALVARADO, ANDREW LOWRY and ANTHONY
        ZEMAN respectfully request that this Court dismiss Count I (False Arrest) and
        Count III (Excessive Force) as being filed one day beyond the two-year statute of
        limitations for claims brought pursuant to 42 U.S.C. §1983;

(2)     Even if not untimely, Defendants, RAFAEL ALVARADO, ANDREW LOWRY,
        ANTHONY ZEMAN and NICHOLAS HAHN, request entry of summary
        judgment as to Count III (Excessive Force) for reasons stated herein;

(3)     Defendants, MARK MCEWAN and DANIEL FLORES, respectfully request that
        this Court dismiss Count II (False Arrest) and Count IV (Excessive Force) for
        reasons stated herein;

(4)     Defendant, RAFAEL ALVARADO, respectfully requests that this Court dismiss
        Count IV (excessive force) for reasons set forth herein;

(5)     All Defendants respectfully request that this Court dismiss Counts V and VI, for
        reasons stated herein;

(6)     If all of the above relief is granted, Defendant, RAYMOND PATON, requests
        that this Court set a jury trial date for Count II: False Arrest and Count IV:
        Excessive Force; and Defendant, RAFAEL ALVARADO, requests a trial date as
        to Count II: False Arrest.

19

Respectfully Submitted,

/s/Michael R. Hartigan_____
Michael R. Hartigan, one of the
attorneys for the Defendants, Village
of Brookfield, a municipal
corporation, et al.

Michael R. Hartigan – mhartigan@hartiganlaw.com
Hartigan & O'Connor, P.C.
53 W. Jackson, Suite 460
Chicago, IL 60604
(312)235-8880

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on the 3rd day of January 2020, he electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.

/s/Michael R. Hartigan_____
Michael R. Hartigan, one of the
attorneys for the Defendants, Village
of Brookfield, a municipal
corporation, et al.