**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROGELIO VALDEZ | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Marvin E. Aspen |
| | ) | Case No. 1:18-cv-5434 |
| THE VILLAGE OF BROOKFIELD, | ) | |
| Illinois, a municipal corporation, | ) | |
| and Brookfield Police Officers | ) | |
| ANDREW LOWRY #402, | ) | |
| RAFAEL ALVARADO #414, | ) | |
| NICHOLAS HAHN #408, | ) | |
| ANTHONY ZEMAN #409, | ) | |
| MARK McEWAN #424, | ) | |
| RAYMOND PATON #411, and | ) | |
| DANIEL FLORES #401 | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Marvin E. Aspen, District Judge:

Plaintiff Rogelio Valdez ("Valdez") brought this lawsuit alleging two false arrests, excessive force, and malicious prosecution claims under 42 U.S.C. § 1983. (Pl.'s Compl. ("Compl.") (Dkt. No. 1) ¶¶ 37–59.) Presently before us is Defendants Village of Brookfield, Andrew Lowry, Rafael Alvarado, Nicholas Hahn, Anthony Zeman, Mark McEwan, Daniel Flores, and Raymond Paton's (collectively "Defendants") motion for partial summary judgement. (Defs.' Mot. Partial Summary Judgment (Dkt. No. 60)). This motion pertains to all counts arising from the August 8, 2016 arrest ("August arrest") and the false arrest and excessive force counts related to the May 2017 arrest ("May arrest"). (*Id.*) Defendants also moved for summary judgment as to Valdez's malicious prosecution claims, which Plaintiff surrenders in his response. (Pl.'s Mem. in Resp. to Mot. for Summary Judgment ("Resp. Mem.") (Dkt. No. 69.) at

23.) For the following reasons, Defendant's motion (Dkt. No. 60) for summary judgment is granted in part and denied in part.

## BACKGROUND

Plaintiff Rogelio Valdez lived in Brookfield, Illinois at all relevant times to this lawsuit. (Def. Statement of Material Fact ("Def. SOF") (Dkt. No. 62) ¶ 1; Pl. Statement of Material Fact Resp. ("Pl. SOF Resp.") (Dkt. No. 71) ¶ 1.) Valdez was 62 years old at the time of the August arrest and 63 years old at the time of the May arrest. (Pl. Statement of Material Facts ("Pl. SOF") (Dkt. No. 70) ¶ 1; Def. Statement of Material Fact Resp. ("Def. SOF Resp.") (Dkt. No. 83) ¶ 1.)

The parties dispute whether Valdez is disabled and the extent to which he is disabled. (Pl. SOF ¶ 3; Def. SOF Resp. ¶ 3.) Valdez claims to suffer back issues and problems with his left knee and cites to his receipt of Social Security Disability Insurance payments as evidence of his disability. (Pl. SOF Ex. A ("Valdez Dep.") (Dkt. No. 70-1) 18:13–18.) Defendants counter and point to Valdez's statement that he may receive SSDI because of his Post Traumatic Stress Disorder, suggesting that it is unclear what the nature of Valdez's disability was. (Def. SOF Resp. ¶ 3; Valdez Dep. 19:5–20:13.) Valdez used assistive technology to walk at all times relevant to this case. (Pl. SOF ¶ 3; Def. SOF Resp. ¶ 3; Valdez Dep. 136:22–138:1.)

This case concerns two incidents between Valdez and the Brookfield Police, the May and August arrests. We discuss the factual background of each arrest in turn.

I. **August 2016 arrest**

On August 8, 2016 at around 11:00 p.m., Valdez called 911 to report his daughter Teresa assaulted him. (Def. SOF ¶ 12; Pl. SOF Resp. ¶ 12.) Prior to Valdez contacting 911, Teresa "snapped" following an argument about loud music. (*Id.* ¶ 15.) Each time Valdez attempted to stand from his recliner, Teresa pushed him back down. (*Id.*) Approximately "minutes" after

2

Valdez placed the 911 call four male uniformed police officers arrived at his door. (*Id.* ¶ 16.) The four officers were Alvarado, Hahn, Zeman, and Lowry. (*Id.* ¶ 17.) Defendants did not see or hear anything happening inside the building as they approached. (Pl. SOF ¶ 6; Def. SOF Resp. ¶ 6.) Valdez opened his apartment door to let them inside because he wanted them to extract his daughter. (Def. SOF ¶ 16.)

As Defendants entered the apartment building, they did not hear arguing, yelling, slapping, screaming, thumping, banging sounds, or anything otherwise indicating an emergency. (Pl. SOF ¶ 6; Def. SOF Resp. ¶ 6.) Defendants did not report seeing drugs or contraband inside Valdez's apartment. (*Id.*) Teresa did not claim that Valdez had hit her when Defendants interviewed her, but Valdez told the Defendants that Teresa had hit him. (*Id.* ¶ 7.)

Two officers took Valdez out to the landing outside his apartment door, while the other two were in the kitchen with Teresa. (Def. SOF ¶ 18; Pl. SOF Resp. ¶ 18.) Valdez demonstrated for at least one of the officers how his daughter had pushed him. (*Id.*) Lowry claims Valdez pushed him in his chest with an open hand. (Pl. SOF Ex. E ("Lowry Dep.") (Dkt. No. 70-5) 59:1–13.) Lowry was not injured in any way because of this purported contact. (*Id.* 59:5–60:1.) Valdez denies having touched either officer; instead, he claims he demonstrated how Teresa pushed him using his hands in the air. (Pl. SOF Resp. ¶ 18; Valdez Dep. 72:6–8.) Valdez was handcuffed behind his back in "about five seconds" and led down the stairs. (Def. SOF ¶ 19.) Valdez characterizes this as being "rushed down the stairs" without shoes "like there was a fire." (Pl. SOF Resp. ¶ 19; Valdez Dep. 87:6–89:22.) Valdez broke his left great toe and ultimately required surgery to repair it because one of the Defendants stepped on it while rushing him down the stairs. (Pl. SOF ¶ 17; Def. SOF ¶ 17.) The parties dispute the number of officers leading

3

Valdez down the stairs: Defendants claim there were only two officers, while Valdez claims all four led him. (Def. SOF ¶ 19; Pl. SOF Resp. ¶ 19.)

The parties dispute whether at any time Valdez resisted arrest and whether Valdez pushed Lowry down a flight of stairs. (*Id.* ¶ 18) Sergeant Hahn recalled that Lowry tripped and fell down the stairs as the responding EMTs documented in his worker's compensation claim. (*Id.* ¶ 19.) Lowry never told Hahn he was pushed down the stairs. (*Id.* ¶ 20.) The parties dispute the cause of Lowry's injury and the extent to which Valdez contributed to it. (*Id.*)

The arrest took place between 11:00 p.m. on August 8, 2016 and midnight of August 9, 2016. (*Id.* ¶ 22.) No evidence shows Valdez was wearing a watch that night. (*Id.* ¶ 23.) Valdez signed a sheet at the police station dated August 9, 2016 at 1:07 a.m. on August 9, 2016. Both criminal complaints against Valdez are dated August 9, 2016. (Pl. SOF Ex. L ("Felony Criminal Complaints") (Dkt. No. 70-12.)) Alvarado drafted and reviewed these complaints and Zeman signed them as the complainant on behalf of Lowry. (*Id.* ¶ 26.) Both Alvarado and Zeman were present for Valdez's arrest and were aware that the incident date was August 8, 2016, the date the incident began. (*Id.* ¶ 27.) The information against Valdez lists the incident date as August 9, 2016 in three different places. (*Id.* ¶ 29.) The Felony Review Facts Sheet lists the date of arrest, the "incident began" date, and the date of Valdez's police statement as August 9, not August 8. (*Id.* ¶ 30.) The bond slip that Valdez received when he was released from custody was dated August 9, 2016. (*Id.* ¶ 31.)

On August 2, 2018, an attorney retained by the Village of Brookfield ("Village") to respond to an Illinois Freedom of Information Act ("FOIA") request sent by Plaintiff's attorneys received an email from a Village of Brookfield employee verifying that the FOIA request deals with an incident in which Lowry broke his ankle "during the August 8, 2016 arrest." (Pl. SOF

4

Ex. Q (Dkt. No. 70-17.)). On August 6, 2018, the Village FOIA attorney received a packet of materials, the contents of which the parties dispute. (*Id.*) On August 14, 2018, the Village attorney responded to the request and turned over documents including the police reports. (*Id.* ¶ 37.)

## II.     May 2017 arrest

Nearly a year after the August 2016 arrest, Valdez was arrested a second time on May 4, 2017. (Def. SOF ¶ 44; Pl. SOF ¶ 38.) Valdez heard banging on his apartment door. (Def. SOF ¶ 45.) He opened the door and observed four officers on the landing. (*Id.*) The parties dispute whether the officers falsely claimed to have a warrant to arrest Teresa, but there is no dispute that they claimed they were there to arrest Teresa. (*Id.*; Pl. SOF Resp. ¶ 45.) The four officers were Paton, Alvarado, Flores, and McEwan. (*Id.* ¶ 46.) Valdez recalled Paton as the one who handcuffed him quickly and without assistance from another officer. (*Id.* ¶ 47.) The parties dispute whether Paton used force in effectuating this arrest. (*Id.* ¶ 49.)

Officer Alvarado assisted in placing Valdez under arrest, assisting Paton in forcibly removing Valdez from his apartment. (*Id.* ¶ 50; Pl. SOF ¶ 39.) While doing so, Alvarado delivered two knee strikes to Valdez. (*Id.*) Alvarado claims he administered the strikes after observing a pocketknife in Valdez's back pocket. (*Id.*) Valdez made no attempt to reach for the knife, and said he only used the knife as a letter opener. (Pl. SOF ¶ 39; Pl. SOF Ex. D ("Alvarado Dep.") (Dkt. No. 70-4) 104:18–112:1.)

McEwan and Flores went into Valdez's apartment and placed Teresa in handcuffs. (Def. SOF ¶ 48.) Neither officer observed Valdez's arrest, although both were feet away. (Def. SOF Resp. ¶ 40.)

5

**LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record. . . ." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party may not rest upon the mere allegations or denials of the adverse party's pleading, but rather must set forth specific facts showing that there is a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *See Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

**ANALYSIS**

**I.      Statute of limitations**

Defendants argue the statute of limitations bars Valdez's claims arising from the August arrest because Valdez's lawsuit was filed a day too late. (Def. Mem. in Supp. of Summary

6

Judgment ("Def. Mem.") (Dkt. No. 61) at 2–6.) Valdez argues that the statute of limitations should be equitably tolled or Defendants' equitably estopped from asserting a statute of limitations defense, because Valdez was misled into believing he was arrested on August 9, 2016 by the official arrest paperwork, when he was actually arrested a day prior. (Resp. Mem. at 13–14.)

### A. Accrual Date

The statute of limitations for § 1983 claims in Illinois is two years. 735 ILCS 5/13-202; *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011). Although state law governs the statute of limitations period for § 1983 claims, the "accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095 (2007). A claim of excessive force under § 1983 "accrues immediately" at the time the alleged excessive force occurs. *Evan v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010). For false arrest claims under § 1983, however, the statute of limitations begins to run "at the time the claimant becomes detained pursuant to legal process"—that is, when the arrestee is "bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 397, 127 S. Ct. at 1100; *Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013). An arrestee is held in custody by legal process when he is placed on bond by a judge. See, e.g., *Caudle v. Illinois*, No. 18 CV 50230, 2019 WL 1522641, at *3 (N.D. Ill. April 5, 2019); *Harris v. Village of Ford Heights*, 2018 WL 2718029, at *4 (N.D. Ill. June 6, 2018). A *Gerstein* hearing constitutes being held pursuant to legal process. *Pope v. City of Chicago*, No. 08 C 4715, 2009 WL 811625, at *2 (N.D. Ill. March 24, 2009)

Here, the alleged false arrest and excessive force occurred just before midnight on August 8, 2016. Plaintiff attended a bond hearing on August 9, 2016 where Judge Maryam Ahmad made

7

a judicial determination of probable cause pursuant to *Gerstein.* (Def. SOF ¶¶ 22–34); *Gerstein v. Pugh*, 420 U.S. 103, 126, 95 S. Ct. 854, 869 (1975). Thus, Plaintiff was not detained pursuant to legal process until August 9, 2016. (Def. SOF ¶ 33.) We analyze the accrual date of the false arrest claim and excessive force claim separately. Accordingly, Plaintiff's false arrest claim accrued on August 9, 2016, the date when Plaintiff was bound over before a judge. (Def. SOF ¶ 33.) Thus, it is not time-barred because Plaintiff filed his lawsuit on August 9, 2016, the final day afforded him. Accordingly, Defendants' motion for partial summary judgement on the false arrest claim arising from the August arrest (Count I) is denied as to all Defendants.

Unlike the false arrest claim that accrued at the *Gerstein* hearing, Plaintiff's excessive force claim accrued on August 8, 2016, when the officers allegedly used excessive force. (Def. SOF ¶ 27; Pl. SOF Resp. ¶ 27.) Therefore, Plaintiff's excessive force claim was filed one day beyond the statute of limitations. We turn below to consider whether equitable tolling save Plaintiff's excessive force claim from the statute of limitations.

      **B.**     **Equitable tolling of the excessive force claim**

In § 1983 actions, federal courts must apply state equitable tolling provisions. *Bryant v. City of Chicago*, 746 F.3d 239, 243 (7th Cir. 2014). Equitable tolling permits a plaintiff to sue after the statute of limitations has expired if "despite all due diligence, [the plaintiff] is unable to obtain vital information bearing on the existence of his claim." *Johnson v. McBride*, 381 F.3d 587 (7th Cir. 2004); *Cada v. Baxter Healthcare Corp*, 920 F.2d 446, 451 (7th Cir. 1990). Equitable tolling is a rare remedy to be applied only where extraordinary circumstances prevented timely filing, not a cure-all for an entirely common state of affairs. *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). The application of equitable tolling turns on whether a reasonable person would be aware of the "possibility" of a claim, not on "any effort by

8

the defendant to prevent the plaintiff from filing suit." *Cada*, 920 F.2d at 451; see also *Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir. 2002). Even if the defendant is not responsible for the plaintiff's failure to sue within the limitations period, equitable tolling may still apply. *Singletary v. Cont'l Illinois Nat'l Bank and Trust Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir.1993). For example, equitable tolling may be appropriate if the plaintiff, despite all reasonable diligence, cannot obtain information necessary to decide whether his injury is due to wrongdoing, or determine the wrongdoer's identity, has received inadequate notice, or if the appointment of counsel is pending. *Savory*, 469 F.3d at 673–74. Simply missing a deadline by even a single day, with no explanation, does not justify equitable tolling. *Marcello*, 212 F.3d at 1010. If extraordinary circumstances weighing in favor of equitable tolling are identified, they must be balanced against any prejudice that the delay might cause the defendants. *Savory*, 469 F.3d at 673–74; *Singletary*, 9 F.3d at 1243.

    *Bryant* and *Marcello* suggest a continuum between plaintiffs who simply narrowly miss the statute of limitations deadline and plaintiffs who seek information to comply with the deadline but are met with resistance. In *Byrant*, a pro se arrestee brought § 1983 false arrest action against unnamed police officers and unsuccessfully moved to compel disclosure of identities of the unnamed police officers. 746 F.3d at 243. The court held that equitable tolling was appropriate because the plaintiff acted with reasonable diligence to obtain the missing information necessary to complete his complaint in his motion to compel. *Id.* By contrast, in *Marcello*, the plaintiffs argued that the limitations period should be equitably tolled because their attorney lost her father several weeks before the deadline and because the deadline was unclear. 212 F.3d at 1010. The *Marcello* court declined, reasoning that "the threshold necessary to trigger equitable tolling is very high" and that the attorney's misfortune was not enough. *Id*. The court

9

also reasoned that unclear deadline is not ground for equitable tolling because if the deadline was unclear to the plaintiffs, "they should have filed by the earliest possible deadline, not the latest." *Id*.

Here, Plaintiff made a clear effort to obtain the correct date of the arrest through a FOIA request prior to the expiration of the statute of limitations. (Pl. SOF ¶ 32.) As in *Bryant*, Valdez took active steps to ensure he dispelled any confusion that might lead to late filing, although he was ultimately unsuccessful. (*Id.*) Unlike *Marcello*, Valdez made active attempts to determine the correct date of the arrest. (*Id.* ¶¶ 32–37.) In addition, *Marcello* dealt with a court deadline, which the parties were free to ask the court to clarify. 212 F.3d at 1008. Valdez had already availed himself of his best option to seek the true date of the arrest and putative excessive force in his FOIA request. (Pl. SOF ¶ 32.) Although Defendants suggest Plaintiff had access to the police report listing August 8, 2016 as the date of arrest, the basis of this claim is a reference to the police report containing false information in Valdez's original complaint. (Def. SOF Resp. ¶ 36.) This standing alone does not suggest Valdez had access to the report, since the reference to the report is glancing and general. (*See* Dkt. No. 1 ¶ 16.) Thus, the information to which Valdez was privy prior to the August 8 deadline all suggested his arrest occurred *after* midnight. (Pl. SOF ¶¶ 22–31.) Therefore, Valdez made appropriate efforts to obtain information necessary to clarify the date of the arrest prior to the expiration of the statute of limitations, and equitable tolling may be appropriate.

Finally, we consider the balance of hardships. Since the deadline passed by only a single day, partially due to confusion Defendants contributed to by repeatedly recording the wrong date of arrest in official documents, the balance of hardships does not tip in Defendants favor. (Pl. SOF ¶¶ 21–31; Def. SOF Resp. ¶¶ 22, 26, 29, 30, 31.) It is not clear what, if any, hardship

Defendants would suffer in terms of lost access to witnesses or relevant information as a result of tolling the statute of limitations a single day (arguably only a few hours). Thus, we toll the statute of limitations and decline to bar Plaintiff's excessive force claim for missing the deadline by a single day. We consider the remainder of Defendants' summary judgment arguments about excessive force below, but deny Defendants' motion for summary judgment on the statute of limitations question.

II. **August arrest excessive force claim**

Defendants Lowry, Alvarado, Hahn, and Zeman moved for summary judgment on the excessive force claim arising from the August arrest. (Dkt. No. 60.) We consider Defendants' conduct jointly for the purpose of analyzing this portion of the motion.

Freedom from excessive force during an arrest is a clearly established right under the Fourth Amendment. *Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018). An officer "who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest." *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016). "Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871 (1989) (quoting *Tenn. v. Garner*, 471 U.S. 1, 8, 105 S. Ct. 1694, 1699 (1985)). "[P]roper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S. Ct. at 1872. This inquiry is an objective one, without regard to the officer's

11

underlying intent or motivation. *Id.* at 397, 109 S. Ct. at 1872. (citation omitted). Each discrete use of force must be separately justified. *Dockery*, 911 F.3d at 467 (citing *Deering v. Reich*, 183 F.3d 645, 652 (7th Cir. 1999)).

*Williams* dealt with a driver pulled over for failure to signal, then stepped out of his car while waiting for an officer to return to his vehicle and issue a citation. 809 F.3d at 939. Since the officer was alone at the scene, had told Williams to remain in his vehicle, yet Williams began walking away from the scene. *Id.* The Seventh Circuit upheld summary judgment for the officer on an excessive force claim. *Id.* The Court reasoned that Williams was plausibly attempting to resist arrest since he both ignored the officer's requests that he remain in the car and appeared to be fleeing away from the scene; as a result, the Court felt the use of some force to effectuate Williams' arrest was reasonable. *Id.* at 944.

As in this case, *Payne v. Pauley* dealt with claims of both false arrest and excessive force arising from a possible resisting arrest charge. 337 F.3d 767, 775 (7th Cir. 2003). Although the district court applied qualified immunity and granted summary judgment,[1] the Seventh Circuit reversed, reasoning that it would have to credit the officer-defendant's account to conclude the plaintiff was resisting arrest. *Id.* at 779. Ultimately, the Court concluded the officer-defendant's use of force "in arresting a woman who was not threatening to harm the police officer or anyone else at the scene, was not resisting or evading arrest, was not attempting to flee, and was charged with such minor offenses, was not objectively reasonable." *Id.*

Unlike *Williams* and like *Payne*, the parties here dispute whether there was probable cause to arrest Valdez for resisting arrest. The severity of the crime at issue in this case is judged

---

[1] Defendants did not raise a qualified immunity defense in their summary judgment briefing. We decline to *sua sponte* consider qualified immunity at this stage.

objectively, so the Defendants' view that Valdez was resisting or battering an officer receives no more weight in determining the level of offense at issue than Valdez's view that he did nothing to resist. (*See* Pl. SOF ¶¶ 8–9; Def. SOF ¶¶ 20–26.) If an objective observer would not have believed that Valdez was resisting arrest or assaulting a police officer, then the Defendants' conduct should be analyzed under *Graham* based on the facts about which there is no material dispute. As the Court noted in *Williams*, even a minor infraction such as failure to activate a turn signal does not justify the use of force to effectuate an arrest. *Williams*, 809 F.3d at 944. Here, it is not clear the Defendants had probable cause to arrest Valdez of *any* crime, much less the serious crime of resisting arrest. (*See* Dkt. No. 60 (declining to move for summary judgment on this question).) As a result, Defendants' citation to *Williams* supports Plaintiff's position that whether the use of force to effectuate an arrest was reasonable turns on whether an objective observer would believe there was probable cause Valdez was resisting arrest or battered Lowry. If an objective observer would not believe that probable cause existed to arrest Valdez for either crime, then *no* force was justified, because the Defendants faced no threat from an innocent, elderly civilian who had requested their aid. *See Payne*, 337 F.3d at 779. Thus, rushing an innocent man who required support to walk down the stairs and subsequently injuring his great toe *could* constitute excessive force. It is also not clear which officers participated in moving Valdez down the stairs. (Pl. SOF ¶ 15; Def. SOF Resp. ¶ 15.) Summary judgment is thus denied for all Defendants as to the August arrest excessive force claim. Since we cannot say at this juncture whether Sergeant Hahn may have been directly involved in the use of excessive force, we also deny summary judgment as to his failure to intervene.

### III. May arrest: excessive force

Defendants Alvarado, McEwan, and Flores moved for summary judgment on Valdez's excessive force claim stemming from the May arrest. (Dkt. No. 61.) Paton has not moved for summary judgment on this claim. (*Id.*)

As we discussed above, objective reasonableness is the hallmark for granting summary judgment on an excessive force claim. *Graham*, 490 U.S. at 396, 109 S. Ct. at 1871.

Here, Alvarado used a knee strike technique against Valdez after observing a pocketknife in Valdez's back pocket while placing Valdez under arrest. (Pl. SOF ¶ 39; Def. SOF Resp. ¶ 39.) Valdez's made no attempt to reach for the knife. (*Id.*) The knife is a small pocketknife that Valdez reportedly uses to open letters. (*Id.*) Alvarado did not report feeling threatened because of the knife. (Pl. SOF Ex. D ("Alvarado Dep.") (Dkt. No. 70–4) 108:1–22.) Therefore, this is not clearly a case of an officer using force to secure his safety. (*Id.*) Indeed, no reasonable observer of these facts would think that he was in imminent danger absent evidence Valdez reached for the knife. In fact, Valdez appears to carry the pocketknife regularly in his pocket as a utility tool, rather than a weapon. (Pl. SOF ¶ 39; Def. SOF Resp. ¶ 39.) Further, such a knife is not likely to be a significant threat, as compared to a visibly larger knife. Finally, possession of a pocketknife is not criminal conduct. (Alvarado Dep. 118:1–22.) Therefore, Alvarado allegedly used the knee strike technique against a complying arrestee who was lawfully in possession of a letter-opening device and who made no attempt to reach for the device. An objective observer of this conduct could consider it unreasonable in relationship to the minimal risk to Alvarado's safety, especially in light of Valdez's lack of criminal conduct. In addition, since according to Valdez's account he did not attempt to resist arrest, all the *Graham* factors weigh against granting summary judgment

14

for Alvarado. Thus, summary judgment is denied for Defendant Alvarado as to the May arrest excessive force claim.

It is undisputed that Defendants McEwan and Flores did not use any force whatsoever against Valdez. (Pl. SOF ¶ 40; Def. SOF ¶ 40.) The only claim of excessive force related to either of these Defendants is the failure to intervene claim, which is discussed below. (*Id.*) To the extent Valdez attempts to claim a direct excessive force claim against either McEwan or Flores, we grant summary judgment as to those claims.

**IV.   May arrest: failure to intervene and false arrest**

Valdez theorizes that McEwan and Flores are liable for Paton and/or Alvarado's use of force because they failed to intervene to prevent the harm. (Dkt. No. 1.) Defendants respond that there was no reasonable opportunity to intervene, since McEwan and Flores were dealing with Valdez's daughter Teresa in another room, so they were not close enough to intervene. (Def. SOF Resp. ¶ 40.)

"[P]olice officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so have been held liable." *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). "An official satisfies the personal responsibility requirement of § 1983 if she acts *or fails to act* with a deliberate or reckless disregard of the plaintiff's constitutional rights." *Id.* (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.1982) (emphasis in original)). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997). "[A] 'realistic opportunity to intervene' may exist whenever an officer could have 'called

15

for a backup, called for help, or at least cautioned the excessive force defendant to stop.'" *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.1994)). Lack of prolonged contact between the excessive force defendant and plaintiff may be grounds for rejecting a claim of failure to intervene. *See Lanigan*, 110 F.3d at 478 ("Chief Robertson could not have undertaken any action to "un-do" any alleged constitutional violation . . . .").

Here, McEwan and Flores were not present during any of the putative use of excessive force, even in Valdez's account of the events of the May arrest. (Pl. SOF ¶ 40.) Since these Defendants were dealing with Valdez's daughter in another room at the time force was used against Valdez, and the force used was applied quickly and then stopped, neither defendant could have undertaken any action to stop the putative excessive force. (*Id.*) Although both could have stepped in once they were apprised of the situation, neither could have prevented the use of excessive force themselves since they were not aware of the use of force at the time it occurred. (*See id.*) Thus, as in *Lanigan*, summary judgment is appropriate for McEwan and Flores on the failure to intervene to prevent excessive force claim.

Regarding the failure to intervene as to the false arrest claim, however, McEwan and Flores may have been sufficiently apprised of the basis of Valdez's arrest to intervene and prevent a false arrest. (*See id.*) The record is relatively thin on this question. (*Id.*) Nevertheless, since we draw all reasonable inferences in Plaintiff's favor, we believe it is possible McEwan or Flores could have intervened to prevent Valdez being falsely arrested upon hearing the basis for the May arrest. Since neither acted to prevent the May arrest, but both apparently had time to stop the arrest shortly after it took place, their failure to intervene creates a question of material fact as to whether they should have or could have known a constitutional violation was taking

place and acted to stop it. Thus, we deny summary judgment as to the false arrest failure to intervene claim.

## V.     Malicious prosecution

Defendant argues that Valdez's criminal prosecutions were not terminated in a manner favorable to the plaintiff, and therefore he cannot bring a malicious prosecution claim. (Def. Mem. at 14–19.) Plaintiff concedes this point in his response brief. (Resp. Mem. at 23.) Thus, the Plaintiff's claims are insufficient as a matter of law and we grant the Defendant's motion for summary judgment against both malicious prosecution counts.

## CONCLUSION

Defendants' motion is granted in part and denied in part. We deny Defendants' motion for partial summary judgment on the false arrest and excessive force claims arising from the August arrest in their entirety. We deny Defendants' motion for partial summary judgment on the excessive force claim arising from the May arrest as to Defendant Alvarado. We grant Defendants' motion for partial summary judgment on the excessive force claim arising from the May arrest as to Defendants McEwan and Flores. We deny Defendants' motion for summary judgment as to the false arrest claim from the May arrest as to all Defendants. We grant Defendants' motion for summary judgment as to all claims based on malicious prosecution. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: June 3, 2020
Chicago, Illinois