IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROGELIO VALDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 CV 5434 |
| | ) | |
| OFFICERS ANDREW LOWRY and | ) | |
| RAFAEL ALVARADO, | ) | Magistrate Judge Jeffrey I. Cummings |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Rogelio Valdez brought this lawsuit alleging that several Village of Brookfield police officers used excessive force and falsely arrested him on August 8, 2016, and May 4, 2017, and that defendant officers and the Village of Brookfield maliciously prosecuted him after each of the two arrests. (Dckt. #1). On June 3, 2020, the Court granted defendants' motion for summary judgment as to the malicious prosecution claims leaving only the excessive force and false arrest claims against the defendant officers to be litigated. *Valdez v. Village of Brookfield,* No. 18-cv-5434, 2020 WL 2935125 (N.D.Ill. June 3, 2020). This matter is set for trial on December 3, 2021.

At the November 9, 2021, final pretrial conference, this Court made oral rulings on the twenty-eight motions in limine filed by plaintiff (Dckt. #127)[1] and the nineteen motions in limine

---

[1] The Court summarily granted plaintiff's motions in limine number 14 (to bar reference to or arguments based on, improper financial considerations), number 16 (to bar previously undisclosed evidence and witnesses), number 21 (to bar evidence of dismissed claims or defendants), number 24 (to bar evidence or argument regarding the effect of this lawsuit on defendant officers' careers), number 25 (to bar evidence of "high crime" area), and number 28 (to exclude non-party witnesses from the courtroom during trial) because they were unopposed by defendants.

filed by defendants (Dckt. #121, 122, 123, 124, 125, 126, 128, 129, 130, 131, and 132).[2] (*See* Dckt. #151 (listing rulings on the motions in limine)). On November 29, 2021, plaintiff informed the Court and defendants that he intended to pursue only his false arrest and excessive force claims against defendants Lowry and Alvardo that arose out of the August 8, 2016 arrest and that he would voluntarily dismiss the remainder of his claims and the other defendant officers. Plaintiff's decision to narrow the scope of his lawsuit has some impact on the Court's prior rulings on the parties' motions in limine. Plaintiff also filed an additional motion in limine (his twenty-ninth) to which defendants have responded. (Dckt. #154, 161). Finally, on December 1, 2021, plaintiff filed a motion for clarification or reconsideration regarding certain motion in limine rulings and defendants filed a response the following day. (Dckt. #165, 167).

This written decision reflects any modifications to the Court's prior rulings,[3] resolves plaintiff's last motion in limine and his motion for clarification or reconsideration, and elaborates on the basis for the oral rulings made at the final pretrial conference.[4]

---

[2] The Court summarily granted defendants' motions in limine number 1 (to bar reference to any lack of internal investigation), number 2 (to bar evidence or argument regarding unrelated police misconduct), number 6 (to bar argument regarding any party's attorney's personal employment history), number 7 (to bar evidence of how plaintiff's arrests affected third parties), number 9 (to bar plaintiff's criminal defense attorney bills), and number 18 (to bar the testimony of Lucia Valdez, Rogelio Valdez, Jr., and Brandy Gonzalez-Valdez) because they were unopposed by plaintiff.

[3] For example, although the Court denied plaintiff's motion in limine number 4 – which sought to bar evidence that he had a pocketknife in his back pocket during the May 2017 incident – the Court now grants that motion because the May 2017 incident is no longer at issue. The Court also grants plaintiff's motion in limine number 27 – which seeks to bar testimony from plaintiff's former neighbors Ann Lenartson and Charlie Smith and which the Court had previously granted in part and denied in part – because defendants have withdrawn Lenartson as a witness and Smith's prospective testimony pertains only to the May 2017 incident.

[4] To the extent that there is any discrepancy between the Court's prior Order (Dckt. #151) and this Memorandum Opinion and Order, the terms of this Memorandum Opinion and Order control.

### a.   Plaintiff's motion in limine number 1 (to bar evidence of intoxication or alcohol use) is granted in part and denied in part

In his first motion in limine, plaintiff moves to bar testimony, evidence, and argument that he was "drunk" or "intoxicated" during the incidents that gave rise to this lawsuit and to bar other unrelated use of alcohol or illicit drugs.  This motion is granted in part and denied in part.  The parties agree that evidence of plaintiff's use of alcohol and pain medication on dates other than the August 8, 2016 date when he was arrested is irrelevant.  *See, e.g., Casares v. Bernal,* 760 F.Supp.2d 769, 784 (N.D.Ill. 2011) (whether plaintiff and witnesses "used illegal drugs or abused alcohol on days other than the date in question carries almost no probative value and would tend to lead the jury to conclude that they are bad characters"); *see also Jones v. Walters,* No. 12-CV-5283, 2016 WL 1756908, at *4 (N.D.Ill. Apr. 29, 2016), *quoting United States v. Galati,* 230 F.3d 254, 262 (7th Cir. 2000) (noting that "[t]he Seventh Circuit has recognized that, '[f]requently, evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony'").

On the other hand, evidence that plaintiff was intoxicated at the time of his arrest "could be admissible under Federal Rule of Evidence 403 because it 'tends to make more probable that plaintiff acted as the defendant[s] contended he did.'"  *Common v. City of Chicago,* 661 F.3d 940, 945 (7th Cir. 2011), *quoting Palmquist v. Selvik,* 111 F.3d 1332, 1342 (7th Cir. 1997); *Casares,* 790 F.Supp.2d at 785-86 (same, and such "evidence helps to explain the facts and circumstances Defendants confronted before during, and after the arrest").  Consequently, defendants can question plaintiff – who admitted in his deposition that he had three to four beers prior to his August 2016 arrest (Dckt. #127 at 3) – regarding his use of alcohol in the twelve hours preceding the arrest.  Moreover, defendants and other officers on the scene can provide a lay opinion under Federal Rule of Evidence 701 regarding whether plaintiff was intoxicated at

the time of his arrest provided that they lay a foundation that their opinion is rationally based on their perception. *See, e.g., Beckham v. Stiles,* No. 06 C 978, 2009 WL 10713312, at *3 (E.D.Wis. Apr. 27, 2009) ("lay opinion on intoxication formed by observing visible signs such as slurred speech, staggering, smelling of alcohol on the breath, etc., is allowed"); *Grim v. Moore,* 745 F.Supp. 1280, 1285 (S.D.Ohio 1988), *appeal dismissed,* 869 F.2d 1490 (6th Cir. 1989).

### b.  Plaintiff's motion in limine number 2 (to bar evidence of his prior or subsequent arrests or other interactions with police, and any other inadmissible alleged criminal conduct) is granted

In his second motion in limine, plaintiff moves to bar evidence of his prior or subsequent arrests or other interactions with police, and any other inadmissible alleged criminal conduct. This motion is granted.  The parties agree that evidence of plaintiff's prior or subsequent arrests and plaintiff's contacts with police which took place *after* the arrest in question should be excluded.  *See, e.g., Fields v. City of Chicago,* No. 12 C 1306, 2018 WL 1652093, at *3 (N.D.Ill. Apr. 5, 2018) ("evidence of Plaintiff's prior arrests is inadmissible under Rule 403 and 404"). Defendant officers do, however, seek to introduce evidence of their contacts with plaintiff which took place *prior* to the arrest at issue.  Defendants assert that their "prior uneventful encounters" with plaintiff demonstrate how each of the defendant officers "responded to each such request for police service" and that "all seven officers named in this cause of action had interacted, in some manner, with [p]laintiff and his family members prior to his arrest[s] without incident." (Dckt. #145 at 8).  Although evidence of a plaintiff's prior contact with the law enforcement officers involved in the incident at issue in a lawsuit is not categorically inadmissible,[5] the purpose for which defendants intend to offer such evidence here is an impermissible one.

---

[5] For example, courts have admitted evidence of defendant officers' prior contact with a plaintiff to shed light on the reasonableness of the force used by the officers during the incident at issue where the plaintiff had resisted arrests during prior encounters, *see More v. City of Braidwood,* No. 08 C 5203, 2010 WL 3547964, at *2 (N.D.Ill. Sept. 7, 2010), or to explain how an officer was able to identify the defendant

In essence, defendants offer the evidence of their prior encounters to support the inference that they acted appropriately with plaintiff during the arrest in question because they acted appropriately with plaintiff and his family members on multiple prior occasions. "It is well settled that prior acts may not be admitted to prove that a person acted in a similar fashion in the case at hand" and courts have "often noted the prejudicial effect of such 'propensity evidence.'" *Lataille v. Ponte,* 754 F.2d 33, 35-36 (1st Cir. 1985). In *Lataille,* "evidence of [plaintiff]'s prior disciplinary offenses was offered by defendants and admitted by the district court for the purpose of showing that [plaintiff] was a violent person and that he, therefore, must have been the aggressor and precipitated the assault" and the First Circuit held that "[t]his evidence was clearly inadmissible under Rule 404." *Id.,* at 37.

Furthermore, the fact that defendants seek to offer evidence of their prior positive actions, rather than of plaintiff's prior negative actions, is of no moment. *See, e.g., United States v. Daneshvar,* 925 F.3d 766, 779 (6th Cir. 2019) ("[f]or the same reason that prior 'bad acts' may not be used to show a predisposition to commit crimes, prior 'good acts' generally may not be used to show a predisposition not to commit crimes") (internal quotation marks omitted); *United States v. Dimora,* 750 F.3d 619, 630 (6th Cir. 2014) (same, and noting that "the Latin maxim *falsus in uno, falsus in omnibus* – false in one, false in all – does not have an inverse corollary: true in one, true in all"). The Court further finds that evidence of plaintiff's prior contacts with defendant officers that are unrelated to the claims in this case is inadmissible under Rule 403 because any conceivable probative value of such evidence is substantially outweighed by the danger of unfair prejudice to plaintiff and confusion of the issues. *See, e.g., Fields,* 2018 WL

---

accused of the crime after seeing him for a few seconds. *See United States v. Farley,* No. 15-CR-00092-THE, 2015 WL 6871920, at *6 (N.D.Cal. Nov. 9, 2015).

1652093, at *3 (holding that plaintiff's prior unrelated encounters with police officers were inadmissible under Federal Rules of Evidence 403 and 404).

### c. Plaintiff's motion in limine number 3 (to bar evidence of a December 6, 2019 incident between plaintiff and his daughter) is granted

In his third motion in limine, plaintiff moves to exclude video evidence of a December 29, 2019 physical struggle that took place between him and his adult daughter. Defendants seek to introduce this video evidence to rebut an anticipated argument that plaintiff was too disabled, elderly, and/or physically incapable of resisting arrest on the date he was arrested (August 8, 2016). Plaintiff's motion is granted for two reasons.

First, plaintiffs' counsel confirmed at the final pretrial conference that plaintiff does not intend to argue that he was either too disabled, too elderly, or physically unfit to resist arrest on the dates he was arrested. Rather, regardless of his physical capabilities, plaintiff intends to argue that he did not resist arrest on the date in question. Evidence that plaintiff had a physical struggle with his daughter more than *three* years after his arrest does not make it more or less likely that he resisted arrest on the date in question. Accordingly, the video evidence is irrelevant. *See* Fed.R.Evid. 401. Second, assuming for the sake of argument that evidence of a post-arrest struggle between plaintiff and his daughter is potentially relevant, the Court finds that any such probative value of the December 2019 struggle has "attenuated by the passage of time"[6] and is substantially outweighed by the danger of unfair prejudice to plaintiff and confusion of the issues.

---

[6] *United States v. Rodriquez,* 215 F.3d 110, 120 (1st Cir. 2000); *United States v. Stephenson,* No. 8:20-CR-286-CEH-AAS, 2021 WL 3130358, at *4 (M.D.Fla. July 23, 2021) ("A court, in its discretion, may exclude relevant and material evidence if it is too remote in time from the issues at trial.").

**d.      Plaintiff's motion in limine number 5 (to bar evidence of certain medical and psychological records, medications, and/or diagnoses) is granted in part and denied in part**

In his fifth motion in limine, plaintiff moves to bar certain evidence of his medical and psychological records, medications, and/or diagnoses on the grounds that the evidence is irrelevant and prejudicial.  In particular, plaintiff seeks to bar evidence from his medical records that list medical diagnoses such as bipolar disorder, post-traumatic stress disorder (PTSD), and chronic generalized pain and reference plaintiff's alcohol dependence, his one-time use of cannabis to treat his chronic pain, and his prescribed medications (diazepam (Valium) and a painkiller known as tramadol).  (Dckt. #127 at 8).

Defendants admit that they were unaware of plaintiff's mental health conditions at the time of his arrest and they agree that "their actions were not informed or motivated by [p]laintiff's mental health conditions of which they had no prior knowledge."  (Dckt. #145 at 12, 13).  Accordingly, evidence that plaintiff has been diagnosed with certain mental health conditions is irrelevant to the inquiry of whether defendant officers used excessive force when they arrested him.  *See, e.g., Palmquist,* 111 F.3d at 1339-41 (citing cases); *Burton v. City of Zion,* 901 F.3d 772, 780 (7th Cir. 2018) ("In deciding excessive force claims, the issue is whether an officer's use of force was objectively reasonable given the information he or she knew at the time") (internal quotation marks omitted).

Nonetheless, defendants argue that they are entitled to present evidence of plaintiff's past medical and psychological history because that evidence bears on plaintiff's claims for past and future damages.  The Court agrees in part.  Plaintiff intends to seek damages for the physical pain that he experienced on account of the injuries he sustained during the course of the arrest in question.  Evidence of plaintiff's "documented chronic generalized pain that pre-existed the

August 2016 arrest" (Dckt. #145 at 12) is relevant because it will help place plaintiff's testimony about his physical pain into context. The Court will also allow evidence that plaintiff was prescribed tramadol prior to August 2016 to help control his pain.[7]

On the other hand, the Court will bar defendants from presenting evidence of plaintiff's bipolar disorder and PTSD provided that plaintiff – as his attorneys have indicated – seeks only garden variety emotional distress damages and limits his testimony accordingly. Although there is no single definition for "garden variety" damages, at least two courts in this Circuit have "defined 'garden variety' damages as meaning: 'the negative emotions that [plaintiff] experienced essentially as the intrinsic result of the defendant's alleged conduct,' but not the 'resulting symptoms or conditions that she might have suffered.'" *Coleman v. City of Chicago,* No. 1:17-CV-08696, 2019 WL 7049918, at *1 (N.D.Ill. Dec. 23, 2019), *quoting Flowers v. Owens,* 274 F.R.D. 218, 225 (N.D.Ill. 2011); *Santelli v. Electro-Motive,* 188 F.R.D. 306, 309 (N.D.Ill. 1999). Under this formulation, plaintiff can "testify generally about his humiliation, embarrassment, anger, and feeling depressed, anxious and dejected as a result of his encounter[s] with defendants" but he cannot introduce evidence of the fact or details of any treatment he received for this distress, offer evidence through any witness other than himself about the symptoms or conditions he suffered, or offer evidence of any psychological diagnoses. *Flowers,* 274 F.R.D. at 227; *Santelli,* 188 F.R.D. at 309; *Auer v. City of Minot,* 178 F.Supp.3d 835, 844-46 & n.4 (D.N.D. 2016).

Provided that plaintiff confines his testimony and evidence regarding his emotional distress damages within the above parameters, the Court finds that plaintiff's interest in privacy

---

[7] The Court will bar evidence of plaintiff's alcohol dependence and his one-time use of cannabis to treat his chronic pain. Whether plaintiff "used illegal drugs or abused alcohol on days other than the date[s] in question carries almost no probative value and would tend to lead the jury to conclude that [he is] a bad character." *Casares,* 760 F.Supp.2d at 784.

outweighs the probative value of the information regarding his psychological diagnoses contained within his medical records. *See Doe v. Oberweis Dairy,* 456 F.3d 704, 718 (7th Cir. 2006) ("The judge can seal the plaintiff's psychiatric records and limit their use in the trial (which is public) to the extent that plaintiff's interest in privacy outweighs the probative value of the information contained in the records"); *Auer,* 178 F.Supp.3d at 846 (the fact that a civil rights plaintiff places his mental health condition at issue by making a garden variety claim for emotional distress does not mean that all his mental health records will be admissible at trial). Accordingly, the Court bars defendants from referencing the fact that plaintiff was diagnosed and treated for bipolar disorder and PTSD and that he was prescribed diazepam. Plaintiff's motion in limine number 5 is therefore granted in part and denied in part.

### e. Plaintiff's motion in limine number 6 (to bar evidence of marijuana use or the "smell" of marijuana) is granted

In his sixth motion in limine, plaintiff moves to bar evidence of marijuana use and the "smell" of marijuana. In particular, defendants seek to offer testimony from Neil Seivwright – a former neighbor who lived across the hall from plaintiff – that he could smell marijuana coming from plaintiff's apartment when he returned to his apartment on the night of the August 2016 arrest and that he called 911 and told the dispatcher that "they do a lot of drinking and they are smoking marijuana" because that is what gets plaintiff and his daughter "rowdy." (Dckt. #145 at 14). Defendants assert that "the jury should be permitted to hear this testimony from an independent witness and weigh its probative value." (*Id.*).

The Court disagrees. As stated above, the focal point in an excessive force case "is whether an officer's use of force was objectively reasonable given the information he or she knew at the time." *Burton,* 901 F.3d at 780. What Seivwright claims to have smelled and his belief about what plaintiff and his daughter were doing prior to plaintiff's August 8, 2016 arrest

is only relevant to the extent that Seivwright's observations were communicated to the defendant officers who responded to the scene.[8]

Seivwright spoke only to the 911 dispatcher who, in turn, communicated with the responding officers. The 911 dispatcher did not tell the responding officers that Seivwright had smelled marijuana coming from plaintiff's apartment and that he suspected plaintiff and his daughter were smoking and drinking. Instead, the 911 dispatcher informed the responding officers only that there was a possible domestic called in by an anonymous tenant in the building who states that we're there all the time. (Dckt. #145-20); *see Jones v. Kuschell*, ___ Fed.Appx. ___, 2021 WL 5563715, at \*1, 3 (7th Cir. Nov. 29, 2021) (analyzing an officer's knowledge prior to the fatal encounter based upon what he was told in the dispatch report). Furthermore, defendant officers Hahn and McEwan testified that they did not smell marijuana in plaintiff's apartment, no marijuana was found in plaintiff's apartment, and none of the defendant officers testified that marijuana played any role in their arrest of plaintiff on August 8, 2016. (Dckt. #127 at 9). Thus, Seivwright's proposed testimony about the smell of marijuana and what he believed that plaintiff and his daughter were doing prior to the August 8, 2016 arrest is irrelevant to both the excessive force and false arrest claims. Moreover, such testimony – as even defendants acknowledge – "has an obvious potential for prejudice" to plaintiff. (Dckt. #145 at 13). Accordingly, plaintiff's motion in limine number 6 is granted.

### f. Plaintiff's motion in limine number 7 (to bar the outcome of plaintiff's criminal charges from the 2016 and 2017 incidents) is denied

In his seventh motion in limine, plaintiff moves to bar evidence of the outcome of the criminal charges that were brought against him on account of the August 2016 incident.

---

[8] Defendants' reliance on the decision in *Mowrey v. City of Fort Wayne*, No. 1:12-CV-121, 2013 WL 6512664 (N.D.Ind. Dec. 12, 2013), is misplaced. In *Mowrey*, the defendant and other officers sought to offer their *own* testimony about plaintiff's behavior before and during his arrest. *Id.* at \*5.

Nonetheless, in response to defendants' motion in limine number 17, plaintiff also acknowledges that the jury will wonder what happened to the criminal charges against him after they hear that he has been arrested and that it would be best to provide the jury with some information as to the disposition of the charges to avoid undue speculation by the jurors. (Dckt. #148 at 11). The Court agrees and it directed the parties at the final pretrial conference to agree to a stipulation along the following lines:

> As a result of Plaintiff's arrest on August 8, 2016, he was charged with aggravated resisting a peace officer, aggravated battery to a police officer, battery, and resisting a peace officer. All of the charges against Plaintiff were dismissed after Plaintiff's successful graduation from a diversionary program specifically designed for veterans.

(Dckt. #148 at 11-12). Accordingly, plaintiff's motion in limine number 7 is denied.[9]

### g. Plaintiff's motion in limine number 8 (to bar evidence of civilian witnesses' criminal histories) is granted in part and denied in part

In his eighth motion in limine, plaintiff moves to bar evidence of civilian witnesses' criminal histories, including the criminal charges and convictions of Teresa Aldabbas (plaintiff's daughter). Specifically, plaintiff seeks to bar evidence that:

a. In March 2012, Aldabbas received a sentence of one year of supervision for a misdemeanor domestic battery conviction involving her 14-year-old daughter. Her supervision was terminated in an unsatisfactory manner in August 2012;

b. In August 2012, Aldabbas received a misdemeanor conviction for the violation of an order of protection and a conviction for domestic battery. On account of these convictions, Aldabbas spent several days in the custody of the Cook County Sheriff and her conditional discharge was terminated as satisfactory in April 25, 2017;

---

[9] Conversely, defendants' seventeenth motion in limine, which seeks to bar the dismissal orders from plaintiff's criminal case, is granted in light of the parties' stipulation regarding the outcome of plaintiff's criminal case.

    c.    Aldabbas pled guilty to a misdemeanor charge of resisting a peace officer on February 26, 2018. This conviction arose out of the May 2017 incident that was previously the subject of this lawsuit and Aldabbas served three days in Cook County Jail;

    d.    Aldabbas pled guilty to a felony charge for her violation of a statute titled as the "Murderer and Violent Offender Against Youth Registration Act," 730 ILCS 154/1 *et seq.* (the "Youth Registration Act"), on February 26, 2018. (Dckt. #145-12 at 2).[10] Aldabbas received a sentence of two years of probation for this conviction, which was predicated on Aldabbas' first 2012 misdemeanor domestic battery conviction. She successfully completed her probation on August 20, 2021; and

    e.    Aldabbas pled guilty to a misdemeanor battery charge and received a sentence of supervision on August 16, 2021.

(Dckt. #167-2).

Federal Rule of Evidence 609 permits a party to attack a witness's credibility with evidence that the witness has been convicted within the past ten years of a felony offense or of a misdemeanor offense "if the court can readily determine that establishing the elements of the crime required proving – or the witness admitting – a dishonest act or false statement." Fed.R.Evid. 609(a)(1) &(a)(2). Such evidence must be admitted in a civil case subject to Rule 403. Fed.R.Evid. 609(a)(1)(A). Under this standard, evidence of Aldabbas's misdemeanor

---

[10] On May 16, 2017, Aldabbas was charged in a three-count indictment/information with violations of 730 ILCS 154/30 – failure to report annually (Count I), 730 ILCS 154/30 – failure to report address change (Count II), and 730 ILCS 154/10(A) – failure to register as a violent offender against youth (Count III). (Dckt. #145-12). Aldabbas pled guilty to the charge in Count I and the charges in Counts II and III were nolle prossed. (*Id.*).

convictions is inadmissible because none of the misdemeanor crimes for which she was convicted required proof of "a dishonest act or false statement."

However, a different conclusion is warranted with respect to Aldabbas's February 2018 felony conviction for the failure to register as a violent offender against youth in violation of the Youth Registration Act. Courts have recognized that, "as to a felony conviction, Rule 609 reflects 'the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath.'" *Sec. Nat'l Bank of Sioux City, Iowa v. Abbott Lab'ys,* No. C 11-4017-MWB, 2013 WL 12140998, at *7 (N.D.Iowa Aug. 13, 2013), *quoting United States v. Collier,* 527 F.3d 695, 700 (8th Cir. 2008). Accordingly, "[t]he implicit assumption is that prior felony convictions have probative value." *United States v. Burston,* 159 F.3d 1328, 1335 (11th Cir. 1998). A felony conviction of a non-defendant witness must be admitted in a civil case subject to Rule 403. Fed.R.Evid. 609(a)(1)(A). Plaintiff has the burden of showing under Rule 403 that the probative value of Aldabbas's conviction is substantially outweighed by the danger of unfair prejudice. *See United States v. Tse,* 375 F.3d 148, 164 (1st Cir. 2004).

Plaintiff asserts that any probative value of Aldabbas's felony conviction is outweighed by the danger of unfair prejudice because "[t]he only effect of admitting evidence of this conviction would be to suggest to the jury that Aldabbas is violent and it would allow [d]efendants to introduce evidence of an inadmissible criminal conviction – the misdemeanor battery conviction requiring Aldabbas to report as a violent offender – through a back door." (Dckt. #127 at 14). Defendants do not dispute that evidence of the conviction will portray Aldabbas in an extremely negative light and that revealing the nature of the conviction will likely lead the jury to learn about her misdemeanor battery conviction that created her reporting duty

under the Youth Registration Act. Instead, defendants assert that the probative value of the conviction is strong and outweighs any prejudicial effect because it was the fact of Aldabbas's conviction under the Youth Registration Act that caused the Brookfield Police Department to dispatch officers to plaintiff's apartment in May 2017. (Dckt. #145 at 18-19).

The Court was persuaded by defendants' argument when it initially ruled on this motion at the final pretrial conference. However, plaintiff has now dropped his claims related to the May 2017 incident and the balance between the probative value of the conviction relative to Aldabbas's credibility and the danger of unfair prejudice has shifted. The very title of the statute under which Aldabbas was convicted (the "Murderer and Violent Offender Against Youth Registration Act") along with the fact that admission of the conviction would either reveal that Aldabbas had a previous misdemeanor battery conviction against her minor daughter that is otherwise inadmissible under Rule 609 or – worse yet – cause the jury to speculate that she had duty to report because she committed an even more horrifically violent crime against a youth certainly raises the specter of unfair prejudice.[11]  *See, e.g., Bank of Sioux City,* 2013 WL 12140998, at *7 (the details of the witness's felony child endangerment conviction "are precisely the sort of information that is likely to provoke a jury to make a decision about [the witness's] credibility on an improper, emotional basis, particularly where those details are not sufficiently similar to the details of child care about which [the witness] will testify here to be instructive on the issue of his credibility").

Because the May 2017 incident is no longer at issue in this case, the probative value of Aldabbas's felony conviction "does not arise from the fact that the felony conviction was for

---

[11] "Evidence is unfairly prejudicial when its probative value is outweighed by its ability to appeal to the jury's sympathies, arouse jurors' sense of horror, provoke a jury's instinct to punish, and trigger other intense human reactions."  *Escobar v. Airbus Helicopters SAS,* No. 13-00598 HG-RLP, 2016 WL 6080612, at *1 (D.Haw. Oct. 5, 2016) (citing cases).

[violation of the Youth Registration Act], but simply from the fact that it was a 'felony.'" *Id.* To reduce the possibility of unfair prejudice that might result from the introduction of evidence of Aldabbas's conviction, the Court will exercise its discretion to allow defendants to impeach Aldabbas with the fact that she is a convicted felon and the sentence she received without making any reference to her violation of the Youth Registration Act or any other details of her offense. *Id.*; *United States v. Ford,* 17 F.3d 1100, 1103-04 (8th Cir. 1994) (holding that the trial court did not error or prejudice defendant by exercising its discretion under Rule 403 to exclude the name of a prosecution witness's specific felony sex offense against a minor for impeachment purposes); *Arnzen v. Tyson Foods, Inc.,* No. 18-CV-4060-CJW-MAR, 2020 WL 10486712, at *1-2 (N.D.Iowa Jan. 21, 2020) (holding that defendant may impeach plaintiff with the fact of his felony conviction for indecent contact with a child and the length of his incarceration but may not mention the crime of which plaintiff was convicted). For these reasons, plaintiff's motion in limine number 8 is granted in part and denied in part.

>    **h.  Plaintiff's motion in limine number 9 (to bar testimony by plaintiff as to defendant officers' intent) is denied**

In his ninth motion in limine, plaintiff moves to bar evidence of his testimony regarding defendant officers' intent during the course of the August 2016 arrest that resulted in plaintiff suffering a fracture to his left big toe. In his deposition, plaintiff was asked the following question and gave the following answer:

> Question:  Ok and is it your testimony here today that those officers stepped on your left great toe purposely so as to cause you injury?

> Answer:  I don't believe it was intentionally. It was because they were running down so fast they just kept stepping on me because it was it a tight spot. But they broke the joint of my left toe where I had to get operated.

(Dckt. #127 at 14). Plaintiff seeks to bar this evidence for two reasons.

First, plaintiff asserts – correctly – that the subjective intent of an officer making an arrest is not relevant to an excessive force claim. (Dckt. #127 at 15).[12]  However, evidence of defendant officers' motive and intent is relevant to plaintiff's claim for punitive damages.  *See, e.g., Smith v. Wade,* 461 U.S. 30, 56 (1983) ("a jury may be permitted to assess punitive damages in an action under §1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"); *Via v. Lagrand,* No. 03 C 3278, 2007 WL 495287, at *6 & n.2 (N.D.Ill. Feb. 12, 2007); *Morris,* 2012 WL 3276938, at *13.  Accordingly, evidence of defendant officers' intentions or motivation when they stepped on his left big toe and broke it is relevant to plaintiff's claim for punitive damages.

Second, plaintiff claims that he is not competent to testify regarding defendant officers' intent.  However, as the above excerpt from plaintiff's deposition indicates, plaintiff's testimony regarding defendants' intentions when they stepped on his toe was rationally based on his perception during the course of the August 2016 incident.  As such, it is admissible.  *See, e.g., Virgin Islands v. Knight,* 989 F.2d 619, 629-30 (3d Cir.), *cert. denied,* 510 U.S. 994 (1993) (lay witness to shooting with "firsthand knowledge of the factual predicates that form the basis for the opinion" may express opinion as to whether the shooting was intentional or accidental under Rule 701); *United States v. Juvenile Male,* 864 F.2d 641, 647 (9th Cir. 1988) (holding in an

---

[12] As one court has explained:

> Issues of motive and intent are essentially irrelevant in [an excessive force] case.  The test in an excessive force case is an objective one.  Thus, [a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objective unreasonable use of force constitution.

*Morris v. Long,* No. 1:08-CV-01422-AWI, 2012 WL 3276938, at *13 (E.D.Cal. Aug. 9, 2012), *clarified on denial of reconsideration,* No. 1:08-CV-01422-AWI, 2012 WL 3528015 (E.D.Cal. Aug. 14, 2012), *aff'd,* 592 Fed.Appx. 579 (9th Cir. 2015) (internal quotation marks omitted).

16

adjudication of delinquency based upon assault with a dangerous weapon with intent to do bodily harm that the assault victim's opinion as to defendant's intent was rationally based on the victim's perception and was appropriately admitted under Rule 701).[13]  Accordingly, plaintiff's motion in limine number 9 is denied and plaintiff's testimony regarding defendants' intentions when they stepped on his left big toe is admissible for the limited purpose of evaluating plaintiff's claim for punitive damages in connection with the August 2016 arrest.

### i.    Plaintiff's motion in limine number 10 (to bar testimony that defendant Lowry retired from the Brookfield Police Department because of his interaction with plaintiff) is granted

In his tenth motion in limine, plaintiff moves to bar evidence as to why defendant Lowry retired from the Brookfield Police Department.  In his deposition, Lowry testified that he retired in May 2017 for reasons which included the August 2016 incident with plaintiff and the broken right ankle that he sustained in the encounter.  (Dckt. #127 at 15).  Plaintiff asserts – and the Court agrees – that the reasons why Lowry retired almost a year after his encounter with plaintiff in August 2016 are not relevant to the material issues in this case:  namely, whether defendants had probable cause to arrest plaintiff and whether their use of force was reasonable.  Thus, while the jury will hear about the fact of Lowry's injury, the Court bars defendants from presenting evidence as to why Lowry retired.  Accordingly, plaintiff's motion in limine number 10 is granted.

---

[13] The decision in *Turbchuk v. S. Illinois Asphalt Co., Inc.,* 958 F.3d 541 (7th Cir. 2020), upon which plaintiff relies, is inapposite.  In that case, the Seventh Circuit affirmed the district court's initial ruling that plaintiff's counsel lacked personal knowledge and could only speculate as to why defense counsel emailed a certain document to him.  *Id.* at 554.  In this case, plaintiff has personal knowledge of what was occurring as the parties descended the stairs and his opinion as to defendants' intent when they stepped on his toe is rationally based on his perception of how defendants were moving down the stairs.

**j.      Plaintiff's motion in limine number 11 (to bar irrelevant and prejudicial portions of Neil Seivwright's 911 call and any related testimony by Seivwright or other neighbors) is granted**

In his eleventh motion in limine, plaintiff moves to bar irrelevant and prejudicial portions of the August 8, 2016 call to 911 that Neil Seivwright placed during the August 2016 incident and after plaintiff had called 911 himself.  Plaintiff also seeks to bar any related testimony by Seivwright or other neighbors.  In particular, plaintiff seeks to preclude Seivwright's statements during his 911 call that "you guys are here at least two times a week it seems like" and "I'm sure all my neighbors have called . . . and they're always drinking and smoking in there" and miscellaneous other anticipated testimony from Seivwright (and possibly other neighbors) that he had called police on plaintiff for noise complaints, plaintiff just drank and fell asleep "for the most part," and that the owner of plaintiff's apartment building told him that plaintiff was not allowed to have guests in his apartment.  (Dckt. #127 at 17).

As stated above in reference to plaintiff's motion in limine number 6, information that Seivwright stated in his 911 call is relevant only to the extent that the 911 dispatcher communicated that information to the defendant responding officers.  Since the above excerpts from Seivwright's 911 call were not communicated to defendant responding officers by the 911 dispatcher, they are irrelevant and may not be admitted.  There is likewise no evidence that the other anticipated disparaging testimony referenced above was communicated to the officers or was otherwise known by them.  Accordingly, that anticipated testimony is barred as well. Furthermore, even if the above statements and testimony had any marginal probative value, the Court finds that it would be substantially outweighed by the danger of unfair prejudice to plaintiff given its tendency to tarnish plaintiff's character.

18

**k.      Plaintiff's motion in limine number 12 (to bar prosecutor witnesses from plaintiff's criminal cases) is granted**

In his twelfth motion in limine, plaintiff moves to bar defendants from calling prosecutor witnesses from plaintiff's criminal cases.  The testimony of any prosecutor witnesses will be unnecessary in light of the fact that the Court has ordered the parties to agree to a stipulation regarding the manner in which the criminal charges against plaintiff were resolved.  *See* Section f. (resolving plaintiff's seventh motion in limine).

**l.      Plaintiff's motion in limine number 13 (to allow plaintiff's counsel to ask leading questions of all Village employees and to bar defense counsel from asking leading questions of their own clients) is granted in part and denied in part**

In his thirteenth motion in limine, plaintiff moves for an order allowing his counsel to ask leading questions of all Village of Brookfield employees and to bar defense counsel from asking leading questions of their own clients.  Defendants do not object to a finding by this Court that the two defendant Brookfield officers and the other officers who responded to the scene are witnesses "identified with an adverse party" within the meaning of Federal Rule of Evidence 611(c) such that plaintiff's counsel may question them with leading questions.  (Dckt. #145 at 23).  *See, e.g., Ellis v. City of Chicago,* 667 F.2d 606, 613 & n.13 (7th Cir. 1981).  Defense counsel further asserts that Rule 611(c) permits them to question defendants and the other officers with leading questions to the extent it may be necessary to do so to develop their testimony.  The Court agrees.  *Id.* (citing Fed.R.Evid. 611(c)).  This does not mean, however, that defense counsel will be permitted carte blanche to use leading questions with the officers in the event they are called as adverse witnesses by plaintiff and the Court will use its discretion to keep the form of counsel's questions within the proper bounds.  *See, e.g., United States v. Lewis,* 406 F.2d 486, 493 (7th Cir. 1969) ("The Court's rulings in limiting the leading questions asked

of [defendant] by his counsel were well within its discretion"). Accordingly, plaintiff's motion in limine number 13 is granted in part and denied in part.

### m. Plaintiff's motion in limine number 15 (to bar improper bolstering of police officers in general) is granted

In his fifteenth motion in limine, plaintiff moves for an order barring defense counsel from making certain arguments in opening or closing statements describing the jobs of police officers in general[14] and awards. Defendants agree that the type of general statements at issue "would amount to improper bolstering when phrased in such a manner" (Dckt. #145 at 23) and defense counsel are precluded from offering such evidence at trial. Defense counsel are also barred from vouching for the credibility of defendants or the other officers who may testify by, for example: (1) asking the jury whether an officer would risk his job, reputation, and pension to lie about plaintiff if no evidence is offered on those topics; (2) implying that their professional oath – as distinct from their oath as a witness – will prevent lying; (3) expressing a personal belief in the officers' truthfulness – as distinct from reminding the jury of evidence presented at trial that tends to show that the officers are telling the truth, which is permitted; and (4) otherwise implying that defense counsel have an undisclosed reason to believe that the consequences if the officers lied would be sufficiently grave to guarantee that they would testify truthfully. *See United States v. Alexander,* 741 F.3d 866, 869-71 (7th Cir. 2014) (citing cases).[15]

---

[14] In particular, plaintiff seeks to preclude defense counsel from arguing that police officers in general: (a) serve and protect the public (and thus, the jurors); (b) are heroes; (c) risk their lives every day; (d) face dangerous situations every day; (e) do not use excessive force against people for no reason; and (f) would never risk their careers by doing what plaintiff alleges. (Dckt. #127 at 20).

[15] Defense counsel are also free to point out the absence of specific evidence of a motive for the officers to lie and to generally comment on the credibility of the officers or any other witnesses so long as the comment reflects reasonable inferences from the evidence rather than personal opinion. *Alexander,* 741 F.3d at 870, 871.

Finally, defendants are barred from offering evidence as to their commendations and awards though they can testify as to the fact of their military service as appropriate background evidence. *See, e.g., Charles v. Cotter,* 867 F.Supp. 648, 659 & n.6 (N.D.Ill. 1994) ("the court strongly suspects that evidence of defendants' commendations, awards or honors could only serve the improper function of providing evidence of defendants' character for the purpose of proving action in conformity therewith on the night in question"); *In re 3M Combat Arms Earplug Prod. Liab. Litig.,* No. 3:19MD2885, 2021 WL 954785, at *1 (N.D.Fla. Mar. 14, 2021) ("Courts typically consider evidence of military or police commendations as impermissible character evidence, beyond ordinary background evidence"); *United States v. Brown,* 503 F.Supp.2d 239, 242 (D.D.C. 2007). Accordingly, plaintiff's motion in limine number 15 is granted.

### n. Plaintiff's motion in limine number 17 (to bar use of plaintiff's unverified complaint) is granted in part and denied

In his seventeenth motion in limine, plaintiff seeks to bar defendants from using his unverified complaint as substantive evidence or for impeachment purposes at trial. Defendants agree that the complaint cannot be used as substantive evidence but they do insist that it can be used for impeachment purposes and/or to refresh plaintiff's recollection of what he has alleged against defendants. (Dckt. #145 at 24-25). The Court agrees that defendants may use plaintiff's complaint for impeachment purposes at trial notwithstanding the fact that it was drafted by his attorneys – it is, after all, plaintiff's complaint.[16] *See Vital v. Varco,* No. H-12-1357, 2015 WL 7736637, at *4-5 (S.D.Tex. Nov. 30, 2015), *aff'd,* 685 Fed.Appx. 355 (5th Cir. 2017) (citing

---

[16]Given that plaintiff did not draft his complaint and may not be completely familiar with its contents (Dckt. #127 at 22), it is unclear what value, if any, that the complaint may have for the purpose of refreshing his recollection.

cases, and holding that defense counsel can use a plaintiff's complaint to impeach plaintiff's trial

testimony). Accordingly, plaintiff's motion in limine number 17 is granted in part and denied in

part.

> **o.   Plaintiff's motion in limine number 18 (to bar defense counsel from conducting background checks on jurors via law enforcement databases) is granted in part and denied**

In his eighteenth motion in limine, plaintiff seeks to bar defendants from conducting

background checks on jurors via law enforcement databases.[17]  The Seventh Circuit has yet to

consider the question of whether parties are barred from running background checks on potential

jurors and judges within this District are split on the question with some allowing background

checks and some barring them.  *See Dyson v. Szarzynski,* No. 13 CV 3248, 2014 WL 7205591, at

*2 (N.D.Ill. Dec. 18, 2014) (citing decisions on both sides of the question).  This Court is

persuaded that the benefits of allowing background checks to combat potential juror bias and to

promote judicial efficiency outweigh the potential downsides *if* the background checks are

conducted under the conditions specified below.  *Id.* at *4 (citing the benefits of background

checks).  In particular, defendants must: (1) conduct the background checks in accordance with

the schedule specified by the Court;[18] (2) any objections not raised prior to or during voir dire are

waived; (3) background checks must be performed on all potential jurors, and not just certain

jurors; and (4) defense counsel shall share the results of the background checks with plaintiff's

---

[17] Defense counsel has since indicated that the background checks will be limited to determining whether the prospective jurors have any criminal history with the Village of Brookfield.

[18] The prospective jurors reported to the court on the morning of December 1, 2021 to complete their written questionnaires.  Counsel for the parties thereafter reported to the court later that morning to review the jurors' questionnaires and defense counsel were granted leave to perform their background checks later that day.

counsel and the Court. Accordingly, plaintiff's motion in limine number 18 is granted in part and denied in part as specified above.

### p. Plaintiff's motion in limine number 19 (to exclude reference to collateral-source benefits/payments) is granted

In his nineteenth motion in limine, plaintiff seeks to bar defendants from referring to collateral-source benefits/payments, such as the fact that his medical care was covered by his Veterans Administration benefits. Defendants do not dispute the collateral source doctrine, which "'applies to §1983 actions.'" *Giuffre v. Jefferson,* No. 14 C 3692, 2017 WL 1375536, at *2 (N.D.Ill. Apr. 17, 2017), *quoting Perry v. Larson,* 794 F.2d 279, 286 (7th Cir. 1986). Accordingly, plaintiff's motion in limine number 19 is granted.[19]

### q. Plaintiff's motion in limine number 20 (to exclude any reference to plaintiff's representation agreement with his attorneys) is granted

In his twentieth motion in limine, plaintiff seeks to bar defendants from making any reference to his representation agreement with his attorneys. Defendants do not assert that plaintiff's fee agreement with his attorney is relevant to any fact at issue that will be determined by the jury. Instead, defendants oppose this motion because plaintiff's fee agreement may be relevant for purposes of 42 U.S.C. §1988 should plaintiff prevail on one or more of his claims and subsequently petition for an award of attorney's fees and costs. The fact that plaintiff's fee agreement might ultimately be relevant should he file a fee petition – which will be determined by this Court – does not mean that plaintiff's request to bar defendants from presenting the fee agreement to the jury should be denied. *See, e.g., Carlin v. DairyAmerica, Inc.,* No. 1:09-cv-00430-AWI-EPG, 2017 WL 4224940, at *5 (E.D.Cal. Sept. 22, 2017) (denying motion to

---

[19] Defendants assert that no actual bills from the VA have been produced in discovery and that they have not been furnished with a copy of the VA lien referenced in plaintiff's motion in limine. These matters will be addressed below in the Court's ruling on defendants' motions in limine numbers 10 and 11.

compel production of retainer agreements in a class action on the grounds that they were not relevant to defendant's defenses and proportional to the needs of the case even though the agreements would eventually become relevant in the event of a future class settlement or an award requiring court approval). Accordingly, plaintiff's motion in limine number 20 is granted.

### r. Plaintiff's motion in limine number 21 (to bar evidence of dismissed claims or defendants) is granted

In his twenty-first motion in limine, plaintiff seeks to bar evidence of dismissed claims or defendants. Defendants do not appear to object to this motion and it is granted.

### s. Plaintiff's motion in limine number 22 (to bar evidence of finding of probable cause in the underlying criminal cases) is granted

In his twenty-second motion in limine, plaintiff seeks to bar defendants from referring to the findings of probable cause at plaintiff's *Gerstein* hearing[20] in the underlying criminal case that was pending in the Cook County Circuit Court. The determination of whether there was probable cause for plaintiff's arrests (the issue in this case) is analytically distinct from the determination as to whether there was probable cause for plaintiff's *Gerstein* hearing. *See, e.g., Betts v. City of Chicago,* 784 F.Supp.2d 1020, 1031-32 (N.D.Ill. 2011); *Hillard v. City of Chicago,* No. 09 C 2017, 2010 WL 1664941, at *5 (N.D.Ill. Apr. 23, 2010). Moreover, even if the probable cause finding at plaintiff's *Gerstein* hearing had some marginal probative value, the introduction of such evidence would "risk[] a substantial prejudicial effect" on plaintiff and likely cause the jurors to become confused. *Betts,* 784 F.Supp.2d at 1032. The risk of undue prejudice and jury confusion substantially outweigh any marginal probative value of the probable

---

[20] In *Gerstein v. Pugh,* 420 U.S. 103 (1975), the Supreme Court held that "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention." *Id.* at 126. "[P]robable cause hearings that take place after arrests made without warrants are commonly referred to as *Gerstein* hearings." *Garcia v. City of Chicago,* 24 F.3d 966, 968 n.2 (7th Cir. 1994).

cause finding at the *Gerstein* hearing. Accordingly, plaintiff's motion in limine number 22 is granted.

### t. Plaintiff's motion in limine number 23 (to bar the admission of police reports by defendants, bar their publication to the jury or reading from them at trial by witnesses or defense counsel) is granted in part and denied in part

In his twenty-third motion in limine, plaintiff seeks to bar the admission of police reports by defendants and to bar their publication to the jury or reading from them at trial by witnesses or defense counsel. "In a civil case, police reports may be admissible as a public record or business record," and "[t]hey may also be admitted as admissions of a party opponent when used against a defendant police officer who authored the report." *Truesdale v. Klich,* No. 03 C 8209, 2006 WL 1460043, at *3 (N.D.Ill. May 23, 2006) (citing to Fed.R.Evid. 803(8) & 803(6) and multiple cases). Thus, plaintiff's motion is denied to the extent that he seeks an outright bar on the admission of the police reports.

Nonetheless, as defendants acknowledge, police reports are admissible only to the extent that the information contained within them is trustworthy. (Dckt. #145 at 28); Fed.R.Evid. 803(6) (document not admissible as a business record if the opponent shows that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness); Fed.R.Evid. 803(8) (document not admissible as a public record if the opponent shows that the source of information or other circumstances indicate a lack of trustworthiness).[21] Plaintiff will have the opportunity at trial to argue that the police reports are untrustworthy *prior* to the

---

[21] Furthermore, Rule 803(8) does not remove the hearsay bar from nongovernmental third-party statements contained within police reports. *Jordan v. Binns,* 712 F.3d 1123, 1133 (7th Cir. 2013). Consequently, "'[p]olice reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer.'" *Id. quoting* Fed.R.Evid. 803(8) advisory committee's note.

admission of the reports into evidence or their publication to the jury by witnesses or defense counsel.  For these reasons, plaintiff's motion in limine is granted in part and denied in part.

### u. Plaintiff's motion in limine number 26 (to read certain judicial admissions at trial) is granted in part and denied in part

Plaintiff filed his twenty-sixth motion in limine to obtain an order permitting him to read judicial admissions at trial.  Defendants do not dispute that plaintiff is entitled to present his judicial admissions to the jury but they do assert that the judicial admissions that plaintiff seeks to publish to the jury (Dckt. #127 at 32-34) are plaintiff's interpretations of their answers to various paragraphs of the complaint and, as such, are not actual judicial admissions.  The Court largely agrees.  Plaintiff is instructed to reformulate his proposed judicial admissions and to present them to the Court for its consideration prior to their presentation to the jury.  The Court will thereafter instruct the jury regarding any actual judicial admissions before the close of the evidence.  *See, e.g., Inland Empire Waterkeeper v. Corona Clay Co.,* 17 F.4th 825 (9th Cir. 2021); *Crecy v. Kankakee Sch. Dist. #111,* No. 15-CV-1014, 2017 WL 5899692, at *3-4 (C.D.Ill. Apr. 25, 2017) (instructing jury regarding judicial admission during the course of the trial and sending the instruction to the jury as a "judicial exhibit" for consideration during their deliberations).[22]

### v. Plaintiff's motion in limine number 29 (to bar defendants from showing pictures of defendant Lowry's ankle and limiting defendants' discussion of defendant Lowry's ankle during testimony and argument) is granted

Plaintiff filed his twenty-ninth motion in limine to bar defendants from showing four pictures of defendant Lowry's right ankle to the jury and to limit defendants' discussion of his ankle during testimony and argument.  As indicated above with respect to plaintiff's motion in

---

[22] Plaintiff does not contest defendants' nineteenth motion in limine, which seeks to strike defendants' answer as an exhibit, subject to his ability to make use of any judicial admissions contained therein. According, defendants' nineteenth motion in limine is granted.

limine number 10, defendant Lowry suffered a broken ankle during his encounter with plaintiff in August 2016. Plaintiff asserts that the photographs of Lowry's ankle and other evidence regarding the lasting impact that this injury has had on his physical capabilities is not relevant to any disputed issue that the jury has to determine and that such evidence should be excluded because any minimal probative value it may have is substantially outweighed by the danger of undue prejudice and confusion of the issues. The Court largely agrees.

The two overarching issues that the jury must determine are whether there was probable cause to arrest plaintiff and whether defendants used unreasonable and excessive force against plaintiff in the course of his arrest by roughly handcuffing him and fracturing his toe as they forcefully hustled him down the stairs. Plaintiff asserts – without dispute by defendants – that he was placed under arrest while on the landing outside his apartment before the parties proceeded down the stairs. (Dckt. #154 at 2). Lowry's injury, which occurred as the parties descended the stairs, took place after plaintiff was placed under arrest and is thus irrelevant to the issue of whether defendants had probable cause to arrest him. On the other hand, the fact that Lowry was injured while the parties descended the stairs is relevant to the officers' defense to plaintiff's excessive force claim (namely, that plaintiff was resisting arrest and any injury he suffered during the encounter was caused by his own misconduct). Thus, Lowry will be able to testify to the fact that he suffered a broken ankle, his explanation as to how he sustained the injury, his awareness of how he knew he had suffered a broken bone, and the pain he experienced immediately after the break. (Dckt. #161 at 2).

The additional evidence that defendants seek to offer regarding Lowry's injury is another matter. Photographic evidence must be "relevant to the resolution of some disputed point in a trial or otherwise aid[] a jury in a factual determination." *United States v. Salim,* 189 F.Supp.2d

93, 98 (S.D.N.Y. 2002). The photographs of Lowry's ankle do not meet this test. Furthermore, the photographs are cumulative of his testimony regarding his ankle and they will – whether intended or not – create the danger of undue prejudice and confusion of the issues by generating sympathy for Lowry and inducing the jurors to focus on the nature and extent of his injuries when that is not a matter that needs to be decided to resolve plaintiff's claims. *See United States v. Solomon,* 399 F.3d 1231, 1239-40 (10th Cir. 2005) (excluding cumulative photographic evidence); *Campbell v. Keystone Aerial Survs., Inc.,* 138 F.3d 996, 1004-05 (5th Cir. 1998) (proper to exclude photographs notwithstanding their probative value because they "created some risk that the jury's decision would be based on a visceral response to the images presented"); *Salim,* 189 F.Supp.2d at 98 (finding that photographs were more prejudicial than probative given their "potential for confusing the issues or misleading the jury").

Finally, while the Court certainly has sympathy for Lowry, evidence of the long-lasting adverse effects that he is experiencing on account of this injury has no relevance whatsoever to the issues in this case. Accordingly, the admission of this evidence is barred by Rule 402 and plaintiff's motion in limine number 29 is granted for these reasons.

### w. Defendants' motion in limine number 3 (to bar evidence of the Village of Brookfield Policies/General Orders) is granted in part and denied in part

Defendants bring their third motion in limine to bar plaintiff from offering evidence regarding the Village of Brookfield's internal directives, rules, and regulations on the grounds that the violation of such police regulations and directives is completely immaterial as to the question of whether a violation of the federal Constitution has been established. (Dckt. #121 at 4 (citing to *Thompson v. City of Chicago,* 472 F.3d 444, 454 (7th Cir. 2006)). Plaintiff concedes this point and does not intend to offer evidence that defendant officers "violated Brookfield

28

Police Department rules and regulations as proof, in and of itself, of a constitutional violation."
(Dckt. #148 at 3). Defendants' motion in limine is granted to this extent.

Plaintiff further asserts, however, that evidence of the violation of Brookfield's
regulations and rules is potentially admissible for other purposes, such as for proof of punitive
damages. *See, e.g., Smith v. Garcia,* No. 15-CV-10105, 2018 WL 461230, at *4 (N.D.Ill. Jan.
18, 2018) (citing cases); *Gonzales v. Olson,* No. 11 C 8356, 2015 WL 3671641, at *13 (N.D.Ill.
June 12, 2015). Plaintiff has not identified any particular order, rule, or regulation that he
intends to use to examine the officers and the Court cannot rule on this issue in a vacuum. *Smith,*
2018 WL 461230, at *5. Before plaintiff attempts to make use of any Brookfield order, rule, or
regulation at trial, plaintiff's counsel must first raise the issue with the Court and defense counsel
outside the presence of the jury so that the Court can balance the probative value of the proposed
evidence against "the risk of prejudice based on the potential of running afoul of *Thompson* [*v.
City of Chicago*], confusing the issues for the jury to decide, and wasting their time with a
confusing side show." *Id.* Plaintiffs seeking to use such evidence face an uphill climb, but "the
Court will not categorically foreclose such evidence in a pretrial ruling." *Id.,*; *Gonzales,* 2015
WL 3671641, at *13 (noting that "the proponent of such evidence carries a heavy burden under
FRE 401 and 403").

### x.      Defendants' motion in limine number 4 (to bar evidence of indemnification and to strike the Village of Brookfield from the case caption) is granted

Defendants bring their fourth motion in limine to bar plaintiffs from offering evidence
that they will be indemnified by the Village of Brookfield if they are found liable for
compensatory damages. Plaintiff does not object to the Court barring evidence and argument
concerning Brookfield's statutory obligation to indemnify defendant officers if the jury awards
compensatory damages against them. (Dckt. #148 at 3). Plaintiff does seek to reserve the right

to present such evidence in the event that defendants open the door by presenting evidence of their inability to pay punitive damages. (Dckt. #165 at 4) (citing cases). Defense counsel "has no intention of eliciting 'inability to pay' testimony from either of the two defendants" and defendants agree they will open to door to plaintiff's presentation of evidence regarding indemnification if they change course and present "inability to pay" testimony. (Dckt. #167 at 3).

Defendants also seek to strike the Village of Brookfield from the case caption because the only substantive claims against the Village (namely, plaintiff's malicious prosecution claims) have been dismissed. (Dckt. #1 at 6-7; Dckt. #94 at 17). The Court agrees that it is appropriate to remove the Village as a named defendant and it has also stricken the names of the officers who were defendants under the claims that plaintiff has dropped. *Martin v. City of Chicago,* No. 15-CV-04576, 2017 WL 2908770, at *8-9 (N.D.Ill. July 7, 2017) (removing the City of Chicago as a named defendant from the case caption and verdict form where there were "no substantive claims against it" but noting that the City remained a defendant for indemnification purposes); *Cf. Jones v. City of Chicago,* No. 14-CV-4023, 2017 WL 413613, at *6 (N.D.Ill. Jan. 31, 2017) (refusing to strike the City as a named defendant from the case caption and verdict form where it was still a defendant in the case under a respondeat superior theory for malicious prosecution as well as plaintiff's indemnification claim).

### y. Defendants' motion in limine number 5 (to bar any argument/comment shifting the burden of proof to the defendants) is granted

Defendants bring their fifth motion in limine to bar plaintiff from presenting any argument or comment shifting the burden of proof to defendants. Plaintiff has the burden of proving his claims of false arrest and excessive force and defendants need not offer any evidence in their defense notwithstanding their assertion of affirmative defenses. Accordingly, the burden

of proof will not be shifted to defendants and their motion is granted to this extent. The Court

further notes that neither side may "raise an adverse inference or imply that the jury should make

such an inference" based on the other side's failure to call a witness or offer evidence unless it

first establishes that the missing witness or evidence was peculiarly in the power of the other

party to produce. *See Farnik v. Horan,* No. 14 C 3899, 2018 WL 11195947, at *2 (N.D.Ill. Nov.

1, 2018) (citing to *Oxman v. WLS-TV,* 12 F.3d 652, 661 (7th Cir. 1993)).

**z.      Defendants' motion in limine number 8 (to bar evidence of plaintiff's military record) is denied**

Defendants bring their eighth motion in limine to bar plaintiff from presenting any

evidence regarding his military service in the United States Marine Corps. This motion is

denied. The military service of plaintiff (and defendant officers, for that matter) is appropriate

background evidence. *See, e.g., Wells v. Davis,* No. 05-CV-0811-DRH, 2009 WL 3352642, at

*2 (S.D.Ill. Oct. 16, 2009); *United States v. Lucas,* 395 F.Supp.3d 241, 256-57 (W.D.N.Y. 2019),

*aff'd,* ___ Fed.Appx. ___, 2021 WL 3700944 (2d Cir. Aug. 20, 2021); *Bird v. W. Valley City,* n.

2:12-CV-00903, 2019 WL 1406614, at *7 (D.Utah Mar. 28, 2019), *aff'd,* 831 Fed.Appx. 881

(10th Cir. 2020).

**aa.     Defendants' motion in limine number 10 (to bar evidence of plaintiff's VA billing ledger from August 25, 2016, through May 2, 2018) is denied**

Defendants bring their tenth motion in limine to bar plaintiff from presenting evidence of

plaintiff's billing ledger issued from the United States Department of Veterans Affairs for

services rendered from August 25, 2016, through May 2, 2018. In particular, defendants assert:

(1) no bills for any of the services described in the ledger were produced during discovery; (2)

they cannot determine the reasonableness of the charges; (3) they cannot determine whether the

services that are charged in the ledger are related to plaintiff's August 2016 arrest and plaintiff

has not identified any witness who can do so; (4) plaintiff did not identify in his Rule 26(a)(1) disclosures a specific record keeper from the VA; and (5) plaintiff did not list the medical bills as damages in his Rule 26(a)(1) disclosures. Defendants' motion is denied for the reasons stated below.[23]

First, the billing ledgers *are* the bills for the services that the VA provided to plaintiff and they were produced before the close of discovery on June 5, 2019. (Dckt. #148 at 5). Plaintiff's counsel also advised defense counsel at the time the billing ledgers were produced that the VA does not create individualized bills for each service it renders because the VA does not send bills directly to veterans. (Dckt. #148-2 at 2-4).

Second, the charges for services provided to plaintiff and the reasonableness and methodology by which the charges were calculated are set by a federal regulation (38 C.F.R. §17.101) of which this Court can take judicial notice. 44 U.S.C. §1507; *Crimm v. Missouri Pac. R. Co.,* 750 F.2d 703, 709-10 (8th Cir. 1984); *Hiatt v. United States,* No. CV-20-02247-PHX-MTL, 2021 WL 2454047, at *5 (D.Ariz. June 16, 2021) (the Secretary of the VA is required to prescribe regulations for the purposes of determining reasonable charges for care or services and the Secretary's rate-setting framework is embodied in 38 C.R.F. §17.101). Moreover, the charges were paid by the VA (*see* Dckt. #148-3 at 3-4).

Third, each billing entry on the ledger identifies the date of service and the provider's name (*see* Dckt. #122-1) and defendants have plaintiff's VA medical records so that they can determine whether the services are, in fact, related to plaintiff's August 8, 2016 arrest. Tellingly,

---

[23] Defendants filed their eleventh motion in limine to bar evidence of plaintiff's VA billing ledger for services rendered from May 25, 2018, through April 7, 2019, and they advanced the same arguments as in their tenth motion. Given plaintiff's decision to dismiss his claims related to the May 2017 arrest, it is unclear whether the billing ledger with charges from 2018 and 2019 is still at issue. In any event, the Court's ruling as to defendants' tenth motion in limine is fully applicable to defendants' eleventh motion in limine.

defendants have not pointed to a single billing entry that they claim is not related to the arrest in question. In any event, the Court notes that plaintiff has subpoenaed Dr. Sowmya Mikkilineni, a physician employed by the VA, to testify at trial. Defendants will have the opportunity to cross-examine Dr. Mikkilineni regarding any services charged for on the ledger that they believe are not related to plaintiff's August 2016 arrest.

Fourth, plaintiff seeks to admit the VA billing ledger as a business record under Rule 803(6) and he provided defense counsel with a Rule 902(11) certification for the ledger on July 17, 2020. (Dckt. #148-3 at 2-5). The Court, in its discretion, finds that the VA's certification, which was issued by the Revenue Law Group from the VA's Office of General Counsel, satisfies the requirements of Rule 902(11). *See Thanongsinh v. Bd. of Educ.,* 462 F.3d 762, 777 (7th Cir. 2006). Since plaintiff has produced a Rule 902(11) certification, he need not also provide the testimony of a custodian to establish the admissibility of the ledger under Rule 803(6). *Id.*; *United States v. Kahre,* 610 F.Supp.2d 1261, 1262-63 (D.Nev. 2009).

Finally, although defendants correctly note that plaintiff failed to list the charges for his medical services that are stated in the ledger as damages in his initial and supplemental Rule 26(a) disclosures, the sanction of exclusion under Rule 37(c)(1) is not warranted if plaintiff's failure to comply with Rule 26(a) was harmless. *David v. Caterpillar, Inc.,* 324 F.3d 851, 856-57 (7th Cir. 2003). "'Harmless' means a lack of prejudice to the party entitled to the information." *DR Distributors, LLC v. 21 Century Smoking, Inc.,* 513 F.Supp.3d 839, 959 (N.D.Ill. 2021).

Defendants do not allege in their motion that they suffered any harm on account of plaintiff's failure to comply with Rule 26(a). Moreover, as stated above, plaintiff produced his VA billing ledger during the course of discovery in June 2019. The billing ledger is effectively a

computation of plaintiff's damages for the value of the medical services rendered to him.  If defendants desired to do further discovery into the ledger and the charges stated therein, they could have requested a brief extension of the impending discovery cutoff in which to conduct such discovery.  Under these circumstances, the Court finds, in its discretion, that plaintiff's failure to list the charges for his medical services in his Rule 26(a) disclosures was harmless. *See, e.g., Fields v. BNSF Railway Co.,* No. CIV-16-213-KEW, 2021 WL 4429936, at *1-2 (E.D.Okla. Sept. 27, 2021) (denying motion in limine to exclude damages associated with plaintiff's medical bills for violation of Rule 26(a) where the billing records were disclosed during discovery); *Jones v. Wal-Mart Stores, Inc.,* No. 2:15-CV-1454-LDG-GWF, 2016 WL 1248707, at *7 (D.Nev. Mar. 28, 2016) ("Lesser sanctions and other measures are generally more appropriate than evidence preclusion when the disclosure is provided during the discovery period and the delay can be remedied during the existing discovery period or with a limited and brief extension of discovery."); *United States Sec. & Exch. Comm'n v. Berrettini,* No. 10-CV-1614, 2015 WL 5159746, at *2 (N.D.Ill. Sept. 1, 2015) (finding that late disclosure was "harmless" where the opposing party failed to identify any harm it would suffer if the documents were introduced at trial and failed to allege that the late production of documents inhibited its ability to prepare for trial).

### bb. Defendants' motion in limine number 12 (to bar plaintiff's exhibits 6-9) is denied

During the course of discovery, defendants served a records subpoena upon the VA to obtain plaintiff's medical records.  (Dckt. #124 at 1).  The VA produced over one thousand pages of plaintiff's medical records to defendants, who, in turn, produced them to plaintiff's counsel. (*Id.*).  Defendants bring their twelfth motion in limine to bar plaintiff's exhibits 6-9, which consist of eight pages of plaintiff's VA medical records.  Defendants assert that plaintiff's

34

medical records cannot be admitted at trial because: (a) plaintiff has failed to list the four medical providers listed in the records that comprise plaintiff's exhibits 6-9 in his Rule 26(a) disclosures or his witness list; and (b) plaintiff would have to call each of the four providers as sponsoring witnesses at trial to introduce the records.

In his response and motion for reconsideration/clarification, plaintiff points out that he did disclose "any and all medical personnel who provided treatment to [him] at Jesse Brown VA Medical Center" in his Rule 26(a) disclosures and that he has produced to defendants a Rule 902(11) certification from the VA regarding his medical records, which obviates the need for a "sponsoring witness" to introduce the medical records into evidence. (Dckt. #148 at 6-7; Dckt. #165 at 5). Medical records are admissible as business records under Rule 803(6) if a proper foundation as to the reliability of the records is made. *Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998). Rule 803(6)(D) allows for a party to establish a foundation for business records with a Rule 902(11) certification *or* a records custodian or qualified witness. *Thanongsinh*, 462 F.3d at 777; Fed.R.Evid. 803(6)(D). Because the Court finds that plaintiff's Rule 902(11) certification is sufficient, plaintiff need not call a sponsoring witness to introduce his medical records into evidence.[24] Accordingly, defendants' twelfth motion in limine is denied.

---

[24] The parties have also disputed what use, if any, that plaintiff could make of his medical records at trial if he were unable to secure testimony at trial from a witness from the VA who had some knowledge of the medical care he received at the VA's Jesse Brown Medical Center. *See Lankford v. Reladyne, LLC,* No. 1:14-cv-682, 2016 WL 1444307, at *3 (S.D.Ohio Apr. 8, 2016) (rejecting defendant's categorical argument that medical records may not be introduced unless a medical expert testifies, recognizing that courts have the discretion to exclude medical evidence that is likely to confuse a jury in the absence of expert testimony, and finding under the circumstances in that case that expert testimony was not required to make the medical records understandable to the jury). Plaintiff has since received confirmation that Dr. Mikkilineni from the VA will testify at trial so this dispute appears to be moot.

### cc. Defendants' motion in limine number 13 (to bar plaintiff's medical bills from Oak Street Health) is denied

In March 2019, during the course of discovery, defendants issued a records subpoena to Oak Street Health for records concerning plaintiff. Oak Street produced those records (including medical and billing records) to defendants, who, in turn, produced the records to plaintiff's counsel. In their thirteenth motion in limine, defendants seek to bar plaintiff's medical bills from Oak Street from being presented at trial. Defendants assert that the only representative from Oak Street who was deposed in the case (Priscilla Rivera, nurse practitioner) did not have sufficient knowledge to establish a foundation for plaintiff's medical bills and that plaintiff's listing of "[r]ecord keepers from any and all documents produced by any party in this case" in his Rule 26(a) disclosures is insufficient to disclose a record keeper from Oak Street

Assuming *arguendo* that plaintiff's Rule 26(a) disclosures were insufficient to disclose a record keeper from Oak Street, the sanction of exclusion under Rule 37(c)(1) is not warranted if plaintiff's failure to comply with Rule 26(a) was harmless. *David,* 324 F.3d at 856-57. Defendants have known of plaintiff's medical bills from Oak Street for roughly two-and-one-half years and they do not articulate that they have been prejudiced by plaintiff's failure to disclose an Oak Street record keeper with sufficient specificity. "Multiple courts . . . have found the failure to disclose witnesses whose sole purpose is to authenticate documents the plaintiff knew about is harmless." *Dykzeul v. Charter Commc'ns, Inc.,* No. CV185826DSFGJSX, 2021 WL 4522545, at *4 (C.D.Cal. Feb. 3, 2021) (citing multiple cases); *Spacecon Specialty Contractors, LLC v. Bensinger,* No. 09-CV-0208-REB-KLM, 2011 WL 721263, at *4 (D.Colo. Feb. 23, 2011) ("Because the Custodian of Records at Pinnacol Assurance will not give substantive testimony at trial, the Court finds that Defendant's failure to disclose his name and contact information was

harmless.").[25]   The Court, in its discretion, finds that plaintiff's failure to properly disclose the

Oak Street record keeper under Rule 26(a) was harmless.

### dd.   Defendants' motion in limine number 14 (to bar Dr. Mikkilineni from testifying and to bar Priscilla Rivera and plaintiff from offering medical opinions) is granted in part and denied in part

In their fourteenth motion in limine, defendants seek to bar Dr. Mikkilineni from

testifying at trial and to bar nurse practitioner Priscilla Rivera and plaintiff from offering medical

opinions.   For the reasons stated below, defendants' motion is granted in part and denied in part.

With respect to Dr. Mikkilineni, defendants claim that plaintiff's mention of her in his

Rule 26(a)(1) disclosures was in "improper form" and too "vague" to constitute a proper

disclosure.  (Dckt. #126 at 2-3).  The Court disagrees.  In his Rule 26(a)(1) disclosures, plaintiff

disclosed Dr. Mikkilineni as follows:

> Dr. Sowmya Mikkilineni, as well as any and all medical personnel who provided treatment to Plaintiff at Jesse Brown VA Medical Center, post-occurrence and damages witnesses.   In addition, these witnesses may offer opinions concerning causation, diagnosis, recommended course(s) of treatment, and/or prognosis.   Their opinions will be based on their knowledge, skill, experience, training, education, and examination of Plaintiff and his medical records.

(Dckt. #126-2 at 1-2).  The above disclosure sufficiently identified Dr. Mikkilineni and the scope

of her prospective testimony.  Moreover, defendants subpoenaed plaintiff's VA medical records,

which contained individual records that were authored by Dr. Mikkilieni pertaining to her

treatment of plaintiff.  The Court will permit Dr. Mikkilineni to testify at trial.

---

[25] Defendants' reliance on the decision in *Passarella v. NFI Interactive Logistics, LLC,* No. 12 C 4147, 2016 WL 6134541 (N.D.Ill. Oct. 20, 2016), is misplaced.  In that case, the proposed testimony of the "keepers of records" whom plaintiff failed to properly disclose under Rule 26(a) was not limited to simply authenticating records.  Instead, plaintiff expected to elicit "factual and opinion testimony" from the record keepers "regarding the accuracy and genuineness of the health care providers' records and bills" and additional testimony that the "bills for services provided to Plaintiff represent[ed] 'fair and reasonable charges for services performed.'" *Id.* at *3.  Furthermore, the court found that the failure to properly disclose the identities of the record keepers was not harmless because defendant was deprived of the opportunity to depose them regarding the substance of their testimony.  *Id.* at *4.

Defendants further assert that Dr. Mikkilineni should be barred from offering opinion testimony as to causation, prognosis, or future disability because she was not disclosed as an expert witness. Plaintiff does not dispute this limitation on Dr. Mikkilineni's testimony and the parties agree that her testimony should be limited to her observations and diagnosis of plaintiff and to a description of the treatment that she and other healthcare providers at the VA provided to him.

With respect to nurse practitioner Rivera, defendants assert that she is not qualified to render medical opinions of any sort and that her testimony should be limited to the complaints expressed to her by plaintiff. (Dckt. #126 at 3). Once more, the Court disagrees. In his response, plaintiff cites excerpts from Rivera's deposition where she testified: (a) she has been a licensed nurse practitioner since 2009; (b) she is board certified to practice medicine, which allows her to work independently while treating patients, much like a physician would; (c) she conducts initial assessments, makes diagnoses, orders subsequent treatment (including labs, referrals, and imaging), writes prescriptions (including for narcotics); and (d) her diagnoses do not have to be approved by an attending physician. (Dckt. #148-6 at 2-7). As such, Rivera is qualified to testify and offer non-expert medical opinions regarding her treatment and diagnoses of plaintiff. *See, e.g., Brooks v. Caterpillar Glob. Mining Am., LLC,* No. 4:14CV-00022-JHM, 2017 WL 5633216, at *2 (W.D.Ky. Nov. 22, 2017) (holding that a treating nurse practitioner can testify "regarding her treatment of a patient and her opinions with respect to the patient's injury or treatment" and that she was "not disqualified from offering her opinion merely because she is a nurse practitioner").

Finally, defendants argue that plaintiff should be barred from offering medical opinions but agree that he can testify regarding his alleged pain and suffering following his arrest. *See,*

*e.g., Hendrickson v. Cooper,* 589 F.3d 887, 893 (7th Cir. 2009) ("Given the uniquely subjective nature of pain, . . . , it is understandable that [plaintiff] relied primarily on his own testimony to prove his pain and suffering.") (citation omitted); *Gage v. Metro. Water Reclamation Dist. Of Greater Chicago,* 365 F.Supp.2d 919, 929 (N.D.Ill. 2005) ("courts have routinely held that lay individuals are certainly capable of reliably understanding and testifying to their own medical condition").  Plaintiff agrees with these parameters and affirms that he will not provide expert opinion testimony about his injuries.  Furthermore, plaintiff "may not self-diagnose and may not testify regarding what was communicated to [him] by medical personnel regarding [his] conditions or any diagnosis."  *See Simmons v. City of Chicago,* No. 14 C 9042, 2017 WL 3704844, at *6 (N.D.Ill. Aug. 28, 2017).

### ee. Defendants' motion in limine number 15 (to strike defendants' interrogatory answers and deposition transcripts as exhibits) is granted in part and denied in part

In their fifteenth motion in limine, defendants seek to strike their interrogatory answers and deposition transcripts (plaintiff's exhibits 15-22) from the exhibits that may be used at trial. This motion is granted in part and denied in part.  The parties agree that defendants' interrogatory answers and deposition testimony can be used for impeachment and/or to refresh recollection.  It is also well-settled that interrogatory answers and deposition answers can be admissible under Rule 801(d)(2) to the extent that they are admissions against interest.  *Walker v. Mulvihill,* 83 F.3d 423, 1996 WL 200288, at *5 (6th Cir. 1996); *Bell v. A-Leet Leasing Corp.,* 863 F.2d 257, 259 (2d Cir. 1988); *Town of E. Troy v. Soo Line R. Co.,* 653 F.2d 1123, 1133 (7th Cir. 1980).  This does not mean the entirety of defendants' interrogatory answers and deposition transcripts are admissible.  *See, e.g., Kolb v. Suffolk Cty.,* 109 F.R.D. 125, 127-28 (E.D.N.Y. 1985) ("Rule 801(d)(2)(D) was not intended to permit the introduction of eight of defendant's

employees' entire depositions for substantive purposes where the employees are readily available to testify at trial."). If particular answers are irrelevant or unduly prejudicial or would lead to confusion of the issues, they may not be introduced.[26] Whether particular interrogatory answers and deposition excerpts are published to the jury or read in open court will be determined at trial.

### ff.  Defendants' motion in limine number 16 (to strike defendants' personnel files as exhibits) is denied

In their sixteenth motion in limine, defendants seek to strike defendant officers' personnel files as trial exhibits. This motion is denied. Plaintiff has indicated that he seeks to use the personnel files for impeachment or refreshing recollection only. (Dckt. #148 at 11). Defendants assert that plaintiff should have identified any documents that he intended to use for these purposes in the exhibit list he submitted in conjunction with the final pretrial order. There are two problems with this assertion. First, plaintiff is not required to identify exhibits he may use solely for impeachment purposes. *See DeBiasio v. Illinois Centr. R. R.,* 52 F.3d 678, 686 (7th Cir. 1995). Second, it is impossible for plaintiff to know what documents he may want to use for impeachment until defendants testify at trial.

### CONCLUSION

For all of the above reasons, the parties' motions in limine are granted in part, denied in part, and reserved for ruling in part. The Court also grants in part and denies in part plaintiff's motion for clarification or reconsideration regarding certain motion in limine rulings. The Court will not re-recite its rulings on the parties' numerous motions in limine in this conclusion. Instead, the Court trusts that the parties will carefully review this opinion and fully comply with the rulings stated herein during trial. If there are any questions about the parameters of the

---

[26] Plaintiffs have indicated that they do not intend to publish defendants' interrogatory answers concerning prior lawsuits, past discipline, personal email, or social media accounts unless defendants deny prior lawsuits or discipline. (Dckt. #148 at 10).

Court's rulings, the counsel for the parties are directed to raise them prior to the start of the testimony on each trial day.

**Dated:  December 5, 2021**

_____
**Jeffrey I. Cummings**
**United States Magistrate Judge**